**Leo VARTANIAN, Plaintiff,**

v.

**MONSANTO COMPANY, The Monsanto Company Salaried Employee's Pension Plan (1986), et al., Defendants.**

**Stanley RODOWICZ, et al., Plaintiffs,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, et al., Defendants.**

Civ. A. Nos. 92–30223–MAP, 93–30075–MAP.

United States District Court, D. Massachusetts.

March 31, 1995.

Keith A. Minoff, John C. Sikorski, Robinson, Donovan, Madden & Barry, Springfield, MA, for plaintiff in No. 93–30075–MAP.

David G. Cohen, Egan, Flanagan & Egan, Springfield, MA, for defendants in No. 93–30075–MAP.

John C. Sikorski, John W. Lake, Robinson, Donovan, Madden & Barry, Springfield, MA, for plaintiff in No. 92–30223–MAP.

Francis D. Dibble, Jr., Bulkley, Richardson & Gelinas, Springfield, MA, Richard J. Pautler, Richard P. Sher, St. Louis, MO, for defendant in No. 92–30223–MAP.

*MEMORANDUM REGARDING DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS TO STRIKE JURY DEMAND AND MONSANTO'S MOTION TO TRANSFER*

PONSOR, District Judge.

## I. *INTRODUCTION*

In separate actions before this court, two sets of plaintiff-retirees allege violations of

the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (ERISA). All the plaintiffs assert that their former employers breached ERISA fiduciary duties, intending to deprive them of pension benefits by making unlawful misrepresentations and engaging in unlawful discrimination. Defendants in both cases unsuccessfully moved for dismissal asserting that plaintiffs lacked standing to pursue their ERISA claims. *See Vartanian v. Monsanto Company,* 14 F.3d 697 (1st Cir.1994); *Rodowicz v. Massachusetts Mutual Life Ins.,* 857 F.Supp. 992 (D.Mass.1994). Since it is now clear that plaintiffs have standing under ERISA to bring these claims, the court will address the other issues raised in defendants' motions to dismiss.

The remaining portions of the defendants' motions to dismiss raise identical issues of law and rest on similar factual allegations. Monsanto and MassMutual both argue that plaintiffs' claims for breach of fiduciary duty impermissibly rest on allegations of misstatements regarding business decisions outside the governance of ERISA. They further maintain that ERISA provides only equitable relief and for this reason plaintiffs' demands for jury trials and extracontractual damages should be denied. Addressing the two motions in one memorandum better illuminates both parties' positions and the court's decision on these common legal issues.

The court will allow, in part, defendants' motions to dismiss. In summary, because ERISA does not permit a claim for breach of fiduciary duty based on misrepresentations of *business* decisions, the court will dismiss the claims of MassMutual plaintiffs James Lemon and June DeVine. Plaintiffs' demands for jury trials and extra-contractual damages will also be dismissed. However, because the other plaintiffs have offered sufficient allegations that defendants made misrepresentations specifically regarding possible changes in pension plans, the motions to dismiss their claims will be denied. The court's reasoning is set forth below.

## II.  *FED.R.CIV.P. 12(B)(6)*

■ The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Bergeson v. Franchi,* 783 F.Supp. 713 (D.Mass.1992), citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). If under any theory the complaint is "sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987); *Cuddy v. Boston,* 765 F.Supp. 775, 776 (D.Mass.1991).

## III.  *FACTUAL BACKGROUND*

The *Vartanian* and *Rodowicz* cases each present a variation on the following factual scenario. Soon-to-retire employees were concerned about whether the company was seriously considering any improvements in retirement benefits or severance packages for which they might be eligible if they postponed their retirement. Some employees made specific inquiries about the prospects of a sweeter pension deal and were told that no changes in benefits were under consideration. Others made only general inquiries about the company's financial condition, or made assumptions from general statements about the company's robust health, and concluded that lay-offs were unlikely and that, therefore, the prospects were slim for more attractive pension packages aimed to induce earlier retirement. At any rate, whether based on specific representations or general statements, the employees decided to retire. Shortly thereafter, improved pension and severance plans *were* made available, but only to those employees who had not yet retired. The recently retired employees now have claimed that but for their employer's statements, they would have delayed their retirement to acquire eligibility for the enhanced benefits.

A detailed recitation of the facts is set forth in two previous decisions. *See Vartanian v. Monsanto Company,* 14 F.3d 697; *Ro-*

**68**

*dowicz v. Massachusetts Mutual Life Ins.,* 857 F.Supp. 992. The following summation provides the necessary factual framework for the discussion that follows.

Leo Vartanian, an employee at Monsanto's Springfield production facility, had elected to receive a lump sum payment upon his retirement on May 1, 1991. In early February, 1991, plaintiff heard rumors that Monsanto was planning to offer an incentive early retirement package in the near future. From the time Vartanian heard these rumors until his retirement, he repeatedly queried his supervisors specifically as to whether an early retirement package was under serious consideration. He was always told that there was no such plan. On June 28, 1991, Monsanto did adopt a special early retirement program. Had Vartanian remained on the payroll until June 28, 1991, he would have been eligible for enhanced benefits unavailable to him on the date of his retirement.

Stanley Rodowicz and seven other former MassMutual employees retired between August 1 and October 1, 1992. The eight named plaintiffs received retirement benefits paid by MassMutual. Each claims that the decision to retire during this two-month period was strongly influenced by his or her assumption that MassMutual was not seriously considering, or in the near future planning to offer, an early-retirement incentive program that would have afforded enhanced retirement or severance benefits to the plaintiffs. Plaintiffs allege that their assumptions were based either on responses to direct inquiries or inferences they drew from official communications in the company newsletter.

On October 23, 1992, MassMutual announced an early retirement incentive plan. Eligibility for this plan was limited to employees who retired *after* October 21, 1992 and before January 2, 1993. Plaintiffs now contend that, but for their assumption that no new retirement benefits were under serious consideration, they would have waited to retire until after October 23, 1992.

Vartanian's complaint is comprised of three related claims: Count I, breach of fiduciary duty by misrepresenting the status of Monsanto's consideration of early retirement program in violation of 29 U.S.C. § 1104; Count II, breach of fiduciary duty by misrep-

resenting the status of impending significant staff reductions in violation of 29 U.S.C. § 1104, and Count III, unlawful discrimination in violation of 29 U.S.C. § 1140.

The Rodowicz plaintiffs assert the following ERISA violations: Count I, breach of fiduciary duty by failing to disclose truthfully the status of plans for a reduction in force and accompanying early retirement incentive programs in violation of 29 U.S.C. § 1104; Count II, discrimination in violation of 29 U.S.C. § 1140, and Count III, equitable estoppel pursuant to 29 U.S.C. § 1132(a)(3)(B).

In their respective complaints, all these plaintiffs also demand jury trials on all issues, and seek consequential damages and damages for emotional distress.

## IV. DISCUSSION

These motions raise four issues common to both cases. First, does ERISA permit a claim that an employer breached its fiduciary duty by making general misrepresentations regarding a prospective reduction in force, or must the misrepresentations explicitly concern a prospective or contingent ERISA plan under serious consideration? Second, can allegations of misrepresentation support a claim of discrimination pursuant to 29 U.S.C. § 1140? Third, under what circumstances, if any, are jury trials permissible in ERISA suits? Fourth, may an ERISA plaintiff recover extra-contractual damages?

The court will address each of these issues and then turn to Monsanto's motion to transfer pursuant to 28 U.S.C. § 1404(a).

### A. *Section 1104: Misrepresentations Regarding Business Decisions*

With respect to the administration of benefit plans under the governance of ERISA, company management wears two hats. On the one hand, ERISA does not interfere with the employer's discretionary policy decisions to create, amend or terminate a particular benefit plan. This means that employers are not required to disclose their internal deliberations or the status of business activities. *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992). On the other hand, employers have a fiducia-

ry duty to administer existing ERISA plans for the benefit of participant-employees. When an employer administers a benefit plan, it may not make material misrepresentations concerning a prospective or contingent ERISA plan "under serious consideration." *Vartanian v. Monsanto*, 14 F.3d at 702, citing *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163–64 (6th Cir.1988).

MassMutual maintains that the factual allegations of four of the plaintiffs, Kennedy, Ziemba, Lemon and Devine, as set forth in their amended complaint, fail to state a claim. It argues that these plaintiffs rely solely on statements regarding business decisions, which are not governed by ERISA. Moreover, some of these statements were at worst mere non-disclosures that do not, as a matter of law, rise to the level of affirmative misrepresentations in any event.

Monsanto seeks dismissal of Vartanian's misrepresentation claim for similar reasons. Monsanto maintains that it had no duty to disclose to Vartanian that it was giving serious consideration to implementing significant staff reductions as alleged in the complaint. Additionally, Monsanto argues that, absent a direct inquiry by a plan participant, it had no duty to disclose its serious consideration of amendments to its pension plan.

The defendants' motions are aimed at plaintiffs' attempt to blend the two roles of the employer, as manager and fiduciary, and penetrate the defendants' business decision-making process. Under plaintiffs' theory, a negligent or deliberate misstatement by a corporate supervisor about even the consideration of a reduction in force becomes actionable under ERISA. Since sweeter severance packages often accompany corporate downsizing, the plaintiffs' argument runs, misrepresentations about the one will have the effect of misleading the employee about the other. By this logic, even statements about the company's robust health contained in a newsletter—since they imply that layoffs are unlikely—will become grist for the ERISA mill.

So, for instance, Count II of the Vartanian complaint alleges that, in response to his inquires, Monsanto failed to disclose that it was giving serious consideration to "imple-menting significant staff reductions...." Count III of the Rodowicz complaint alleges breach of fiduciary duty by failure truthfully to disclose "the development of [MassMutual's] plans for reduction in force."

This legal theory is not cognizable under ERISA. A claim for breach of fiduciary duty under ERISA cannot be anchored on an employer's misleading statement regarding its business plans, even when they include possible staff reductions. *See Rodowicz v. Massachusetts Mutual Life Ins. Co.*, 857 F.Supp. at 997–998. *See also Drennan v. General Motors Corp.* 977 F.2d at 251. It is well settled that no violation of ERISA occurs when an employer merely conducts business that is not regulated by ERISA. *Payonk v. HMW Industries, Inc.*, 883 F.2d 221, 224 (3rd Cir.1989). Any other approach would turn ERISA into a handcuff for management.

The *Payonk* court reiterated this established maxim of ERISA law in the context of a corporate reorganization and the resulting business decision not to notify pensioners in advance of a pending termination of a benefit pension plan. The Third Circuit concluded that the termination of benefits could only be considered as a business decision made by the employer in its capacity as an employer. *Id.* at 226. Significantly, management's failure to disclose this decision at *Payonk* was not accompanied by affirmative misrepresentations as to the status of the pension plan. Therefore, no fiduciary obligation of the employer-as-plan-administrator was implicated.

The factual allegations of two of the MassMutual plaintiffs, James Lemon and June DeVine, do not set forth sufficient facts to implicate their employer's fiduciary duty. All that Lemon alleges was that he relied on published policy statements of MassMutual's president that there would be "no major event *such as* an early retirement plan and/or major severance program offered." Rodowicz Complaint, ¶ 30 (emphasis added). DeVine relied on similar statements by the company president that

there would be no early retirement incentive program *and/or* major incentive program offered, and that MassMutual was a

**70**

"strong company" and that he did not see a need for layoffs *and by implication* any early retirement incentive program. *Id.* at ¶ 33.

A careful read of Lemon's allegation makes it clear that he *inferred* from the president's statements that "no major event" *meant* no early retirement incentive plan. There are no facts alleging that the president actually *stated* there would be no early retirement incentive plan. The fact that Lemon was making an inference is further supported by MassMutual's exhibits, which establish that no official statements were printed in the company newsletter regarding an early retirement incentive program.

DeVine's factual averments are similarly lacking. She claims that the president stated there would be no early retirement program *and/or* major incentive program offered. This slippery conjunctive leaves too much to speculation and inference. The court's skepticism is validated by the remaining portion of the sentence which avers that the president's statement that layoffs were not in the offing *impliedly* meant that there would be no early retirement plan. To recognize her claim would allow employees to establish a breach of fiduciary duty by reading between the lines of an employer's non-ERISA, non-fiduciary statement about a business decision that impliedly could be construed to pertain to a change in pension benefits. As noted, such a reach is not contemplated by § 1104.

The fact that some of the statements were not made in response to direct inquiry, but instead were published in the company newsletter, is not dispositive. If plaintiffs had alleged that the company's purported misstatements explicitly referred to pension plans and were not merely statements on future staffing levels, a different outcome might be required, regardless of the form of the statements.

■ It is significant that plaintiffs Lemon and DeVine have failed to set forth a factually sufficient claim even after the court called this shortcoming to their attention and granted them leave to amend their initial complaint. Given this, even if their general allegations were sufficient, the court would still

dismiss their actions for failure to make their claims with the specificity required by Fed. R.Civ.P. 9(b). All the evidence of misrepresentation, if it exists, is within their knowledge. It should be spelled out precisely.

■ It is immaterial to a determination of defendants' motions whether certain plaintiffs inquired directly as to defendants' business decisions concerning staffing levels or relied on unsolicited misrepresentations in this vein. In either case, the threshold determination in making out an ERISA claim of misrepresentation is "whether the decision taken was a business corporate management decision or whether it was an action falling within the fiduciary functions delineated by ERISA." *Payonk v. HMW Industries, Inc.,* 883 F.2d 221 (3rd Cir.1989).

Vartanian and the remaining Rodowicz plaintiffs make more specific allegations. The alleged misrepresentations made by Monsanto and MassMutual came as responses to direct inquiries about whether the defendants were planning any changes in retirement incentives and benefits.

■ In Count I, Vartanian alleges that he specifically inquired as to whether there would soon be changes in pension benefits or early retirement incentives at a time when Monsanto was seriously considering such changes. This count most certainly states a viable ERISA claim. On the other hand, Count II of the Vartanian complaint rests *only* on allegations that Monsanto misrepresented its serious consideration of significant staff reductions—plainly a business decision unaffected by ERISA.

■ The allegations of the two other MassMutual plaintiffs do implicate fiduciary duties. Among the allegations made by MassMutual plaintiff, Sigmund Ziemba, was his claimed reliance on a "negative response to a direct inquiry he made to a senior officer . . . as to whether there would be any enhanced retirement plan." Rodowicz Complaint, ¶ 29. Patricia Kennedy relied on similar statements by her supervisor.

At this stage of the litigation, the pleadings must be construed in a light most favorable to plaintiffs. With the exception of Count II of the Vartanian complaint, the claims of

misrepresentation discussed above survive defendants' motions to dismiss. After discovery, to the extent it appears that any plaintiff rests his or her claim *solely* on misrepresentations of legitimate business decisions, not governed by ERISA, defendants are entitled to take advantage of Fed. R.Civ.P. 56 to forestall further litigation.

B. *Section 1140: Misrepresentation and Discrimination*

The anti-discrimination provision of ERISA is entitled "Interference with protected rights" and states, in part, that it

> shall be unlawful for any person to ... discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...

29 U.S.C. § 1140. Both sets of plaintiffs claim that defendants' misrepresentations constituted disparate treatment, as proscribed by § 1140, whose purpose was to induce or "trick" them into retiring before enhanced benefit packages went into effect. The MassMutual plaintiffs further allege that their employer warned other employees, but not them, that the enhanced severance program would be adopted.

Monsanto and MassMutual both maintain that § 1140 is only intended to proscribe an employer's retaliatory conduct or other behavior that makes an employee's work environment so intolerable that the employee's decision to end the employment relationship constitutes constructive discharge. *See e.g., Donnelly v. Bank of New York Co.,* 801 F.Supp. 1247 (S.D.N.Y.1992), *aff'd.* 2 F.3d 403 (2nd Cir.1993). In addition, Monsanto contends that even if it did encourage Vartanian to retire, thereby causing him to disqualify himself for future benefits, this inducement fails to state a claim of discrimination. *Id.*

The anti-discrimination provision of ERISA is not as narrow as the defendants would have this court hold. Section 1140 reaches a broad range of employer conduct including claims premised on the discriminatory modification of a pension or retirement plan that intentionally benefits or injures certain identified employees. *Aronson v. Servus Rubber, Div. of Chromalloy,* 730 F.2d 12, 16 (1st Cir.1984), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984).

At the same time, § 1140 does limit claims of discriminatory conduct by requiring that an employer's act or omission be directed against individuals and not simply involve a benefit plan generally. In *Aronson,* the court ruled that the partial termination of a benefit plan that fell "unevenly on employees who remain employed for differing lengths of service in connection with winding up a business" did not constitute discrimination within the meaning of ERISA. *Id.* at 16. The First Circuit held that there was no invidious discrimination in the employer's decision partially to terminate benefits where a legitimate business justification for the decision was readily apparent. *Id.*

Here, more is alleged than a disparate impact to plaintiffs as a result of a business decision to alter a plan. Plaintiffs contend that intentional misstatements regarding the modification of retirement plans at MassMutual and Monsanto caused them prematurely to sever the employment relationship with their respective companies. The MassMutual plaintiffs further allege that there was an intentional design to deprive certain employees—but not others—of enhanced pension benefits. *See Rodowicz v. Massachusetts Mutual Life Ins. Co.,* 857 F.Supp. at 999 (holding that factual pleadings on this issue are weak, but sufficient). The claims of Vartanian and the MassMutual plaintiffs affirmatively allege disparate treatment; i.e., that "the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way." *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir.1990), citing *Aronson v. Servus Rubber, Div. of Chromalloy,* 730 F.2d 12.

Plaintiffs' claim for relief under this section of ERISA may possibly be pled only in the alternative. The § 1140 claims do not appear to set forth an injury separate and distinct from the claims of breach of fiduciary duty. Indeed, under § 1140 plain-

tiffs have the additional burden of establishing *intentional* discriminatory conduct. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217 (11th Cir.1993). By contrast, § 1104 does not appear to require that a fiduciary's misrepresentations be intentional. Nonetheless, viewed in light of the generous pleading standards of Rule 12(b)(6), plaintiffs have set forth valid claims under § 1140 of ERISA.

### C. ERISA and Jury Trials

■ Plaintiffs in both cases have requested jury trials. Identical arguments and case law were relied upon in both requests for trial by jury. The defendants argue that claims brought pursuant to the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(3), entitle plaintiffs only to equitable relief and, consequently, foreclose jury determination of the issues. The court agrees with defendants.

Admittedly, the question of whether ERISA permits trial by jury has not been addressed by the First Circuit. *Charlton Memorial Hospital v. Foxboro Co.*, 818 F.Supp. 456, 459 (D.Mass.1993). Nonetheless, district courts within this Circuit have uniformly held that actions to recover pension benefits under § 1132 are equitable in nature, based on the common law of trusts and the conduct of the trustee. *See Id.* (citing cases). The First Circuit, citing the Supreme Court's decision in *Mertens v. Hewitt Assocs.*, —— U.S. ——, —— –– ——, 113 S.Ct. 2063, 2068–72, 124 L.Ed.2d 161 (1993), has reaffirmed that section 502(a)(3) of ERISA authorizes only equitable relief. *See Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 (1st Cir.1994) (compensatory legal damages do not fall within the appropriate equitable relief provided by section 502(a)(3)). For this reason, Judge Freedman explained that, usually, suits contemplated by § 1132(a)(1)(B) are equitable in nature and do not afford plaintiffs a jury trial. *Fuller v. Connecticut General Life Insurance Co.*, 733 F.Supp. 462, 463 (D.Mass.1990).

In the face of this substantial authority, plaintiffs attempt to distinguish their claims from most ERISA actions relying on a limited exception to the rule set forth above. In *Fuller*, the court posited that "there are circumstances where a claim under § 1132(a)(1)(B) would be legal in nature" entitling plaintiffs to a jury trial. *Id.*, citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 394 (3rd Cir.1988). The *Fuller* court suggested that, if a plaintiff could show "entitlement to benefits due immediately and unconditionally," his claim might be legal rather than equitable and a jury trial would be appropriate. *Id.* (additional quotes omitted), following *Berlo v. McCoy*, 710 F.Supp. 873 (D.N.H.1989) and *Wilson v. Connecticut General Life Insurance Co.*, 670 F.Supp. 52, 53 (D.Me.1987).

Here, it is argued, but for the defendants' breach of fiduciary duty (§ 1104) and unlawful discrimination (§ 1140), plaintiffs would have been "immediately and unconditionally" entitled to benefits. These arguments are unpersuasive for two reasons. First, courts have uniformly found that "entitlement to benefits due immediately and unconditionally" applies only to straightforward breach of contract claims. *See Wilson v. Connecticut General Life Ins. Co.*, 670 F.Supp. 52, 53–54 (D.Me.1987). In this instance, a complicated claim for breach of a trustee's fiduciary duty—most certainly an equitable claim—is at the bottom of both plaintiffs' § 1104 and § 1140 claims.

■ Second, even if these claims were characterized as legal rather than equitable, the *remedy* afforded by ERISA is only equitable. A determination as to whether the Seventh Amendment provides ERISA plaintiffs a jury trial requires inquiry into the remedy sought, not the nature of the action. *Spinelli v. Gaughan*, 12 F.3d 853, 855 (9th Cir.1993). The Court's *Mertens* decision leaves little doubt that ERISA's remedial relief can only be characterized as equitable. *Mertens v. Hewitt Assocs.*, —— U.S. at ——, 113 S.Ct. at 2069. Because "the nature of the issues to be tried in this action is in essence equitable," plaintiffs are not entitled to a jury trial. *Charlton Memorial Hospital v. Foxboro Co.*, 818 F.Supp. at 460.

### D. Extra–Contractual Damages Under ERISA

■ It is equally clear that the extracontractual compensatory, punitive and emo-

tional damages sought by plaintiffs "do not fall within the appropriate equitable relief authorized by ERISA's" remedial provision. *See Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 (1st Cir.1994). The First Circuit has long held that "extra-contractual damages are unavailable" under ERISA. *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988); *Gaskell v. Harvard Coop Society*, 762 F.Supp. 1539 (D.Mass. 1991). Defendants' motions to eliminate these damage claims will be allowed.

## V. *MONSANTO'S MOTION TO TRANSFER*

Pursuant to 28 U.S.C. § 1404(a)[1], Monsanto has filed a motion to transfer this case to the district court in St. Louis, where Monsanto's international headquarters are located. Plaintiff Vartanian is a western Massachusetts resident, retired from Monsanto's sizeable Plastics Division facility located in Indian Orchard, a suburb of Springfield, Massachusetts. There is no dispute that, pursuant to 29 U.S.C. § 1132(e)(2), plaintiff's chosen venue, the Western District of Massachusetts, is a proper place to bring his claims.

The decision to transfer a case under section 1404(a) rests within the sound discretion of the trial court. The moving party bears the heavy burden of establishing that the transfer to another district is proper and must overcome the considerable weight the court gives to a plaintiff's choice of forum. *See Brant Point Corp. v. Poetzsch*, 671 F.Supp. 2, 4 (D.Mass.1987). This is especially true with respect to ERISA actions, because Congress' intent in drafting ERISA's liberal venue provision was to expand an ERISA plaintiff's choice of forum and limit the forum choice of corporate fiduciaries. *See generally, Vartanian v. Monsanto Company*, 14 F.3d at 702.

Here, transfer is sought primarily for the convenience of corporate witnesses who reside in the St. Louis area and administer the benefit plan at issue. It is true that the convenience of these witnesses favors transfer to the Eastern District of Missouri in St. Louis.

More importantly, the interest of justice and, in this instance, the plaintiff's forum choice more than balance the scales. Despite the fact that this dispute is still on the pleadings only, the First Circuit and this court have invested substantial effort in sorting through a number of complex legal issues. Given the extensive history this case has acquired in this circuit, the interests of justice would not be served by requiring another court at this point to familiarize itself with the factual claims and legal issues.

Defendant's position is also weakened by the fact that the alleged misrepresentations upon which Vartanian bases his claims occurred at Monsanto's facility in Western Massachusetts. According to the pleadings, Vartanian's contacts and inquiries regarding early retirement incentives were all made to supervisory personnel at the Indian Orchard facility. Plaintiff's choice of forum is to be accorded more weight when the operative facts have a material connection to the chosen district. *McFarland v. Yegen*, 699 F.Supp. 10, 15–16 (D.N.H.1988); *Brant Point Corp. v. Poetzsch*, 671 F.Supp. at 3.

Finally, the cost and burden to Vartanian, an individual retiree, would be considerable. Taking into account the financial means possessed by the respective parties, a transfer would be far more burdensome to the plaintiff than retaining the case will be for defendant. *Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529, 535 (S.D.Tex. 1993).

## VI. *CONCLUSION*

For the reasons set forth above, defendant Monsanto's motion to dismiss is hereby DENIED with respect to Counts I and III and ALLOWED with respect to Count II. Plaintiff's requests for a jury trial and compensatory and punitive damages are stricken. The motion to transfer is DENIED. Similarly,

---

1. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought."

defendant MassMutual's motion to dismiss is hereby DENIED with respect to Count II and ALLOWED as to Count I, but only with respect to the claims of June DeVine and James Lemon. Plaintiffs' claims for compensatory and punitive damages are stricken. MassMutual's motion to strike plaintiff's jury demand is also ALLOWED.

Separate orders will issue.

*ORDER in Civ.A. No. 93–30075–MAP*

For the reasons stated in the accompanying Memorandum, Defendants' Motion to Dismiss Amended Complaint (Docket No. 36–1) is hereby DENIED with respect to Count II and ALLOWED as to Count I but only with respect to the claims of June De-Vine and James Lemon. Plaintiffs' claims in Counts I and II for relief in the form of economic damages, consequential and emotional distress damages are stricken. Defendants' Motion to Strike Jury Demand (Docket No. 36–2) is hereby ALLOWED.

*ORDER in Civ.A. No. 92–30223–MAP*

For the reasons stated in the accompanying Memorandum, defendants' Revised Motion to Dismiss (Docket No. 11) is hereby DENIED with respect to Counts I and III and ALLOWED with respect to Count II. Plaintiff's claims in Counts I and III for relief in the form of economic damages, consequential and emotional distress damages are stricken. Defendants' Motion to Transfer (Docket No. 7) is hereby DENIED. Defendants' Revised Motion to Strike Jury Demand (Docket No. 12) is hereby ALLOWED.