**John G. KLING, personally and in a representative capacity for the Harnischfeger Industries Employees' Savings Plan, Plaintiff,**

v.

**FIDELITY MANAGEMENT TRUST CO., Francis M. Corby, Jr., Stephen W. Skatrud, James C. Benjamin, Jeralyn J. Meyer, Joseph A. Podawiltz, Kim R. Kodousek, Somerset R. Waters, Eugene L. Fuhrmann, Donna M. Alvarado, Jeanne–Pierre Labruyere, L. Donald Latorre, Ralph C. Joynes, Leonard E. Redon, and Stephen M. Peck, Defendants.**

No. 01–CV–11939–MEL.

United States District Court,
D. Massachusetts.

June 3, 2003.

Robert D. Friedman, Matthew J. Tuttle, Harry S. Miller, Perkins, Smith & Cohen, LLP, Boston, MA, C. Thomas Masor, Tucson, AZ, Peter J. Walsh, Walsh & Keating, S.C., Wauwatosa, WI, for John G. Kling, Plaintiff.

Wilber H. Boies, Nancy G Ross, Brian W. Robinson, McDermott, Will & Emery, Boston, MA, for Eugene L. Fuhrmann, Francis M. Corby, Jr., James C. Benjamin, Jeralyn J. Meyer, Joseph A. Podawiltz, Kim R. Kodousek, Somerset R. Waters, Stephen W. Skatrud, Defendants.

Brian P. Brooks, Robert N. Eccles, O'Melveny & Myers, Washington, DC, James S. Dittmar, James O. Fleckner, Goodwin Procter LLP, Boston, MA, for Fidelity Management And Research Corporation of Massachusetts, Defendant.

### MEMORANDUM AND ORDER

LASKER, District Judge.

John Kling, an employee of Harnischfeger Industries, Inc. (Harnischfeger), sues Fidelity Management Trust Company (Fidelity) and a number of Harnischfeger directors, officers, and employees (collectively the Harnischfeger defendants) for breach of fiduciary duty under ERISA §§ 502(a) and 409, 29 U.S.C. §§ 1109, 1132(a). Fidelity and the Harnischfeger defendants move to dismiss. Kling moves to strike a number of documents submitted

by the various defendants in connection with the motions to dismiss.

All of the motions are DENIED.

## I. Background

Kling began working for Harnischfeger as an apprentice machinist in 1974 and has been working there ever since. Prior to its bankruptcy reorganization in 2001, Harnischfeger was involved in the worldwide manufacture, distribution, and servicing of mining equipment and pulp and paper machinery. Kling participated in the Harnischfeger Industries Employees' Savings Plan (the Plan), which the company established as a qualified plan under ERISA. The Plan was administered by the Harnischfeger Industries Pension and Investment Committee (Investment Committee). The Harnischfeger Board of Directors' Pension Committee (Pension Committee) reviewed the investment policy, actions, and performance of the Investment Committee, made recommendations regarding its membership, reviewed Plan documents, and otherwise oversaw the Investment Committee's work. Fidelity was the Trustee of the Plan.

Under the Plan, participants chose from among eleven options and directed how their contributions should be invested. In addition to a number of mutual funds, some of which were managed by Fidelity, the Plan also included the Harnischfeger Common Stock Fund ("Stock Fund"), an undiversified fund investing almost exclusively in Harnischfeger common stock. In addition to the contributions of participants, Harnischfeger itself made discretionary profit sharing contributions to the Plan, which were allocated to the participants. The Stock Fund consistently attracted more participants and more contributions than any other option in the Plan.

Between October 1997 and April 1998, Harnischfeger engaged in accounting improprieties to disguise adverse developments that would negatively impact the company's profits, future business plans, and stock prices. At the end of April 1998, Harnischfeger revealed cost overruns and accounting irregularities. On June 1, 1998, it announced that it would restate its 1997 fiscal fourth quarter earnings and make large additional adjustments to the financial statements for the first and second quarters of 1998. The company suffered liquidity problems and downgradings of its corporate debt. For the next year, Harnischfeger took massive write-offs, closed businesses, and laid off employees. On June 7, 1999, it filed for bankruptcy. In December 1999, its stock was delisted from the New York Stock Exchange.

Kling alleges that the Pension Committee and Investment Committee knew or should have known of Harnischfeger's financial problems as of October 31, 1997, and should have closed the Stock Fund to participants as of that date because it was no longer a prudent investment. Instead, neither committee took any action until the stock was delisted more than two years later. Kling asserts that during the period in question, the value of the Stock Fund declined by approximately $31 million, and that these losses affected approximately 3500 plan participants.

Kling alleges that Fidelity also had knowledge that the Stock Fund was not a prudent investment choice. As of October 1996, Fidelity itself owned almost six million shares of Harnischfeger stock (12.11 percent of Harnischfeger's outstanding shares). According to Kling, this made Fidelity Harnischfeger's largest shareholder. Between February 1, 1998 and October 31, 1998, Fidelity sold three million shares. Fidelity never disclosed this information to Plan participants or provided them with any advice regarding their investment in the Stock Fund. Kling asserts

that Fidelity breached its fiduciary duty by failing to close the Stock Fund, by failing to disclose to Plan participants its actions regarding its own holdings of Harnischfeger stock, and by engaging in self-dealing and prohibited transactions.

## II. Harnischfeger Defendants' Motion to Dismiss

ERISA § 502(a)(2) provides that "[a] civil action may be brought...by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409." § 502(a)(2), 29 U.S.C. § 1132(a)(2). Section 409(a), in turn, provides that:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

§ 409(a), 29 U.S.C. § 1109(a).

■ In support of their motion to dismiss, the Harnischfeger defendants argue that the Supreme Court's decision in *Massachusetts Mutual Life Insurance Company v. Russell* bars actions that seek recovery for a subset of participants rather than for the plan as a whole. 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ("[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself.").

The Harnischfeger defendants contend that Kling cannot transform his individual action into one seeking plan-wide relief merely by claiming to sue on behalf of the Plan. They cite in support of this argument *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir.1999) (suit on behalf of 67 participants did not state a claim under § 409), and *Horan v. Kaiser Steel Retirement*, 947 F.2d 1412, 1417–18 (9th Cir.1991) (suit on behalf of 24 participants did not state claim under § 409). Additionally, they contend that Kling could not bring a meritorious action under § 409 under *any* circumstances, because the Stock Fund no longer exists.

Kling, in response, urges a much narrower reading of *Russell*. According to Kling, *Russell* stands only for the proposition that if a plan participant sues an ERISA fiduciary for breach of fiduciary duty, the recovery goes to the plan rather than to the individual. Recovery can inure to the plan, Kling argues, without being allocated to each and every participant. Kling distinguishes *Horan* and *Matassarin* as involving groups of plaintiffs who were treated differently from other participants in the same plan, and argues that the fiduciary breaches at issue here, in contrast, were plan-wide because they affected all of the approximately 3500 people who invested in the Stock Fund.

Kling further contends that the demise of the Plan does not bar recovery, citing in support *Gruber v. Hubbard Bert Karle Weber, Inc.*, 675 F.Supp. 281 (W.D.Pa. 1987), *vacated on other grounds by Gruber v. Hubbard Bert Karle Weber, Inc.*, 684 F.Supp. 879 (W.D.Pa.1988) ("In the absence of a functioning Plan, it is the class of beneficiaries and their rights under this Plan which represent the interests of the Plan for the purposes of Section 409.").

Both sides acknowledge that the starting place in determining the merits of the defendants' motion is the Supreme Court's decision in *Russell*. The plaintiff in *Rus-*

*sell,* who suffered from a back ailment, received disability benefits under an ERISA plan. Subsequently, the plan's disability committee terminated her benefits. Russell ultimately persuaded the committee to restore her benefits and to pay her retroactively for the period in question. Having recovered the benefits that were contractually due to her, she then sued the fiduciaries for extracontractual damages, claiming that the resumption of benefits was delayed unnecessarily and that this delay caused her husband to cash out his retirement savings which, in turn, aggravated her psychological condition and worsened her back ailment.

In rejecting her claim, the Supreme Court pointed to the language of § 409, noting that:

> "not only is the relevant fiduciary relationship characterized at the outset as one 'with respect to the plan,' but the potential personal liability of the fiduciary is to make good *to such plan* any losses to the plan... and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan.... "*

*Russell,* 473 U.S. at 140, 105 S.Ct. 3085 (*quoting* 29 U.S.C. § 1109(a)) (alteration in original).

*Russell* appears to set out a bright line test: does the action concern a loss to the plan or a loss to an individual? On one side of this line, where a plan fiduciary syphons money out of the plan for her own gain, the loss to the plan is clear. On the other side, where an individual sues regarding a delay in processing her claim— as in *Russell*—it is equally clear that there has been *no* loss to the plan.

The case at bar, however, falls into a considerable gray area between these two extremes. Kling has styled his action as one on behalf of the plan, and seeks damages reflecting the decline in value of the Stock Fund that allegedly resulted from the defendants' actions. As defendants point out, however, Kling seeks a remedy for only a subset of the plan participants: the approximately 3500 people who placed money in the Stock Fund.

The First Circuit has not had occasion to define what constitutes a loss "to the plan." The defendants cite the First Circuit's decision in *Drinkwater v. Metropolitan Life Ins. Co.* as supporting the motion to dismiss: "Congress ... created liability for breach of fiduciary duty only in favor of the *plan,* and *not* in favor of individual beneficiaries." 846 F.2d 821, 825 (1st Cir. 1988) (emphasis in original). However, the question raised by the present case was not before the court in *Drinkwater.* The plaintiff in *Drinkwater,* whose claim closely resembled Russell's, conceded that *Russell* barred him from bringing an action under § 502(a)(2) (the section providing for a private right of action under § 409) and instead sought to bring an action under § 502(a)(3), which provides for equitable relief and allows for individual as well as plan-wide remedies. *Id.* at 824. The *Drinkwater* holding is primarily concerned with the scope of relief available under that other provision. The passage quoted above and relied upon by the defendants merely describes *Russell's* holding—that liability under § 409 is only in favor of the plan, not in favor of individuals—without shedding any light on the precise boundary between a loss to the plan and a loss to individuals.

As the defendants note, the Ninth and Fifth Circuit have dismissed claims from subsets of participants on the grounds that their claims did not allege losses to the plan. In *Horan v. Kaiser,* twenty-four plan participants brought an action against the fiduciaries. From 1977 to 1984, the plan had purchased annuities for each retiree. Facing a financial crisis in 1985, the

plan ended this practice and instead began paying benefits directly from the trust. When the employer filed for bankruptcy, those being paid directly from the trust suffered a reduction in their benefits, while those with the annuities remained unaffected. The Ninth Circuit rejected plaintiffs' claim for breach of fiduciary duty, citing *Russell* for the proposition that an individual beneficiary may not pursue a fiduciary breach claim to recover benefits or remedies beyond those provided by a plan itself. 947 F.2d at 1417–18. In *Matassarin v. Lynch,* the Fifth Circuit reached a similar conclusion, rejecting a claim for breach of fiduciary duty brought on behalf of 67 people with segregated accounts (such as divorced spouses of participants) whose funds were invested at low interest rates. 174 F.3d at 566.

As Kling points out, however, both cases involved groups of plaintiffs who had been treated differently than other participants in the same plan. More analogous to the present case is *Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir.1995), which concerned a delay in transferring an Employee Stock Ownership Plan (ESOP) to a takeover employer. Under the ESOP, the fiduciaries had discretion to distribute an employee's account upon the sale by the company of substantially all of its assets or of one of its subsidiaries, provided that the employee continued employment with the buyer. The company sold one of its divisions to another employer, who agreed to continue to employ existing employees and to accept a trust-to-trust transfer of the plan assets. However, the transfer of the plan assets was not completed until eighteen months after the sale of the division, by which point the stock had lost eighty percent of its value. The plaintiffs sued on behalf of all of the people affected by this delay. The Sixth Circuit held that the plaintiffs *had* stated a claim for breach of fiduciary duty under § 409:

We conclude that plaintiffs' position that a subclass of plan participants may sue for a breach of fiduciary duty is correct. Defendants' argument that a breach must harm the entire plan to give rise to liability under [§ 409] would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants. Such a result clearly would contravene ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law."

*Kuper,* 66 F.3d at 1453 (citation omitted).

*Physicians HealthChoice, Inc. v. Trustees of Automotive Employee Benefit Trust,* 988 F.2d 53 (8th Cir.1993), is also instructive. There, the court held that a creditor of a defunct multi-employer welfare trust failed to state a claim under § 409. The court agreed with the plaintiff that "conduct that frustrates the interest of participants and beneficiaries in the continuing vitality of a plan" was a valid ERISA concern, but concluded that allowing *creditors* to bring claims under § 409(a) would not advance that aim:

Although we would not hesitate to construe "losses to the plan" in [§ 409] broadly in order to further the remedial purposes of ERISA, we find no suggestion that Congress intended to provide third-party creditors with a new federal weapon to pierce a plan's organizational veil solely for their own benefit.

*Physicians HealthChoice,* 988 F.2d at 55–56.

■ Kling does sue on behalf of the Plan, and thus meets the requirements of § 409 as interpreted by the Supreme Court in *Russell.* That the harm alleged did not affect every single participant does not alter this conclusion. To read such a requirement into § 409 that the harm alleged must affect every plan participant would, as the Sixth Circuit observed, "in-

sulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants." *Kuper,* 66 F.3d at 1453. In contrast to the action at issue in *Physicians HealthChoice,* Kling's complaint raises issues that lie at the very heart of the concerns that prompted passage of ERISA: considering ERISA's legislative history, the *Russell* court observed that "[t]he floor debate...reveals that *the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators* and that ERISA was designed to prevent these abuses in the future." 473 U.S. at 141 n. 8, 105 S.Ct. 3085 (emphasis added).

■ The fact that the Plan itself no longer exists does not bar recovery. As one court observed:

> To deny plaintiffs relief on this basis would reward defendants for the thoroughness of their alleged mismanagement. If defendants wound the victim they may be sued, but kill it and the claim dies with it. Such a construction is absurd and unsupportable.

*Gruber v. Hubbard,* 675 F.Supp. at 284. *Cf. Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Murdock,* 861 F.2d 1406, 1412 (9th Cir.1988) (imposing constructive trust for benefit of participants and beneficiaries, where payment to plan would have resulted in gain to culpable fiduciary).

Accordingly, the Harnischfeger defendants' motion to dismiss is denied.

### III. Fidelity's Motion to Dismiss

#### A. Kling's Motion to Strike

■ As a preliminary matter, the question arises whether Fidelity may submit documents relating to the Plan and Trust Agreement in support of its motion to dismiss.[1] Kling moves to strike, exclude, and disregard these documents on the grounds that in the case of a Rule 12(b)(6) motion, the court should not consider documents outside the corners of the complaint. Kling asserts that his amended complaint makes no reference to any of these documents and indeed that his counsel did not even lay eyes on them until Fidelity's motion to dismiss was filed.

Fidelity responds that plan documents play a central role under ERISA's statutory framework, and are thus an indispensable element of suits alleging breach of fiduciary duty under ERISA. *See, e.g., Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 18 (1st Cir.1998). It contends that, contrary to Kling's assertion, the documents *are* referenced in Kling's amended complaint: for instance in the allegation that defendants "failed to act in accordance with the documents and instruments governing the Savings Plan." (Am. Compl.¶ 58.)

In reply, Kling distinguishes *Beddall* on the grounds that the complaint at issue in *Beddall* discussed the relevant documents at considerable length and contained factual allegations that were expressly linked to them. *See Beddall,* 137 F.3d at 18–19. Moreover, Kling argues, the documents are neither central to nor determinative of his claims, because liability can attach even if the documents purport to relieve Fidelity of any fiduciary status.

■ Ordinarily, in ruling on a motion to dismiss, a court may not consider any doc-

---

1. The motion to strike is directed at documents submitted by both Fidelity and the Harnischfeger defendants. However, the documents in question were not relied upon in the disposition of the Harnischfeger defendants' motion to dismiss, and only Fidelity has op-
posed the motion to strike. Accordingly, the motion to strike the documents submitted by the Harnischfeger defendants is moot, and the motion to strike is considered only to the extent that it concerns Fidelity's motion to dismiss.

uments that are not incorporated into or made an exhibit to the complaint, unless the motion is converted to one for summary judgment. *Alternative Energy v. St. Paul Fire and Marine,* 267 F.3d 30, 33 (1st Cir.2001) (citation omitted). However, an exception may be made "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id. (quoting Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993)). Although Kling's complaint does not refer to these documents except in the broadest of terms, they are nevertheless central to his claim because, as discussed below, ERISA's provisions relating to fiduciary duty make explicit and repeated reference to plan documents. *See, e.g.,* §§ 402, 403, 29 U.S.C. § 1102, 1103. Furthermore, although Kling states that he disputes the authenticity of the documents, he presents no substantive argument that relies on either the content or authenticity of the documents.

In light of the centrality of the documents to Kling's complaint and that lack of any genuine dispute regarding authenticity, the motion to strike is DENIED.

### B.  Motion to Dismiss

In addition to joining the Harnischfeger defendants' motion to dismiss, Fidelity moves to dismiss the complaint as to it on the grounds that, as a "directed" trustee, Fidelity owed no fiduciary duty to Kling or to the Plan. Fidelity argues that under ERISA, "discretion is the sine qua non of fiduciary duty." *Cottrill v. Sparrow, Johnson & Ursillo,* 74 F.3d 20, 22 (1st Cir.1996). Because it had no discretionary control over the selection of investment options, Fidelity contends, it was not a fiduciary with respect to the actions alleged in Kling's complaint. Fidelity notes that the Plan specifies that the Investment Committee selects options (1997 Plan, § 7.3(a), Ex. 86) and that the Trust Agreement provides that "[t]he Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options." (1990 Trust Agreement (TA), § 4(a), Def.'s Ex. I at 131; 1999 TA, Def.'s Ex. J at 172.) Fidelity further points out that both the 1990 and 1999 Trust Agreements, in slightly different wording, specify that the named fiduciary, rather than Fidelity, is responsible for monitoring the suitability of the Stock Fund as an investment option. (Def.'s Ex. I 134; Def.'s Ex. J at 174.) When the Stock Fund was ultimately closed, Fidelity notes, an amendment to the Trust Agreement stated that Fidelity had "no discretionary authority with respect to this sale and transfer directed by" Harnischfeger and the named fiduciary. (1999 TA, 1st Amend, Def.'s Ex. K.)

Fidelity next argues that it cannot be held liable under ERISA § 403(a)(1) because, it asserts, it did not follow directions that were contrary to ERISA or to the Plan. Section 403(a)(1) provides that a trustee is relieved of discretionary power over the management and control of plan assets where:

> the plan expressly provides that the trustee [is] subject to the discretion of a named fiduciary who is not a trustee, in which case the trustee[ ] shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to [ERISA] . . . .

ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1). Fidelity points to ERISA's legislative history, which explains that

> [i]f the [ERISA] plan so provides, the trustee who is directed by an investment

committee is to follow that committee's directions *unless it is clear on their face* that the actions to be taken under those directions would be prohibited by the fiduciary responsibility rules of the bill or would be contrary to the terms of the plan or trust.

H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess. 298, reprinted in III Legislative History of the Employee Retirement Income Security Act of 1974 at 4277, 4565 (emphasis added). According to Fidelity, the directions it received from the Investment Committee regarding the Stock Fund were in accordance with the terms of the Plan because the Plan explicitly contemplated that the Stock Fund would be an investment option; thus, Fidelity argues, they were not contrary to ERISA within the meaning of § 403(a)(1).

As to Kling's allegations that Fidelity failed to disclose to Plan participants its actions regarding its *own* Harnischfeger holdings, Fidelity argues that it had no duty under ERISA to disclose such information. This is so, Fidelity contends, because ERISA allows a trustee to wear "two hats," imposing fiduciary duty only to the extent that a person performs or has the power to perform discretionary functions. *See Beddall,* 137 F.3d at 18. Fidelity notes that courts have declined to impose disclosure obligations when the information is generated in connection with business activities that are unrelated to an ERISA plan. *See e.g., Payonk v. HMW Indus., Inc.,* 883 F.2d 221, 229 (3d Cir. 1989); *Vartanian v. Monsanto Co.,* 880 F.Supp. 63, 69 (D.Mass.1995). Fidelity points out that its mutual fund business is entirely separate from the provision of ERISA plan trustee services, constituting a separate business that provides separate services to separate clients for separate fees, subject to a separate regulatory framework. It notes that Kling has made no allegation that Fidelity had any infor-

mation about Harnischfeger that was not publicly available, but rather maintains that Fidelity should have disclosed the alleged *opinions* of its analysts regarding Harnischfeger stock. Fidelity argues that such a disclosure would have constituted investment advice and would have been inconsistent with the functions assigned to Fidelity under the Trust Agreement. Such a disclosure requirement would also, Fidelity contends, impose unjustifiable burdens on ERISA trustees.

Finally, Fidelity argues that Kling's allegation of self-dealing or prohibited transactions is without merit because Kling has alleged no facts to support a charge that Fidelity did either.

Kling disputes Fidelity's assertion that it is immune from liability for breach of fiduciary duty simply because the Trust Agreements do not imbue it with the requisite discretion. Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), Kling notes, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets.*" (Emphasis added.) The Third Circuit has observed that "discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." *Bd. of Trustees of Bricklayers v. Wettlin Assocs., Inc.,* 237 F.3d 270, 272 (3d Cir. 2001) (citations omitted). *See also Leigh v. Engle,* 727 F.2d 113, 134–35 n. 33 (7th Cir.1984) (inquiry must look beyond the formalities of the plan documents). Kling asserts that Fidelity exercised "tremendous control and authority" over the Stock Fund, deciding when or whether to buy or sell Harnischfeger shares on the common

market. Furthermore, he contends, the Trust Agreements grant Fidelity a wide variety of powers, including the power to borrow funds for Plan transactions, to assert, litigate, or settle any claims, debts, or damages due to or arising from the Trust, and to represent the Trust in all suits and administrative hearings.

Kling's position is that Fidelity's status as a directed trustee and its consequent lack of fiduciary duty are factual questions that cannot be disposed of in a Rule 12(b)(6) motion. Fiduciary status, he contends, depends not just on the party's formal title and obligations, but also on its functions and actions:

> ... ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a) .... ERISA defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties—and to damages— under § 409(a).

*IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1418–19 (9th Cir.1997) (internal case citations omitted, emphasis in original). Kling also cites *FirsTier Bank., N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir.1994), in which the Eighth Circuit held that a directed trustee had a duty of prudence under ERISA § 404 to inquire into the merits of loans, even if made at the direction of another fiduciary:

> [A]n ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary is not relieved of its fiduciary duties to conform to the prudent man standard of care, *see* 29 U.S.C. § 1104(a); to attempt to remedy known breaches of duty by other fiduciaries, *see* 29 U.S.C. § 1105(a); and to avoid prohibited transactions, *see* 29 U.S.C. § 1106.

As to Fidelity's argument that its duty to disregard directions was limited to directions that were "clear on their face" violations of ERISA, Kling disputes the weight of the legislative history on which Fidelity's argument rests. He cites in his support *Koch v. Dwyer*, 1999 WL 528181 at *9 (S.D.N.Y. July 22, 1999), in which the court observed that ("[n]either the statute nor the case law uses the 'clear on their face' standard, and in any event ... the proper inquiry is whether a given direction is contrary to ERISA.").

Here, Kling contends, Fidelity knew it was imprudent to invest in Harnischfeger but continued to allow Plan funds to be invested in the Stock Fund. *Koch v. Dwyer*, he argues, is directly on point: the defendant trustee, American Express, was sued for carrying out a direction to invest in company stock, and, like Fidelity, it argued that it was not responsible for the catastrophic investment in company stock because it was a directed trustee. The court disagreed:

> If AET were aware that the direction to invest in JWP common stock was imprudent or that the fiduciaries' direction to make that investment was based on an inadequate investigation, then AET would not be immune from liability because it would have knowingly carried out a direction that was contrary to ERISA.

In reply, Fidelity argues that Kling's functional approach to determining fiduciary status under ERISA is directly contrary to First Circuit cases such as *Cottrill* and *Beddall*, and that the cases outside the First Circuit on which Kling relies, such as *FirsTier* and *Bricklayers*, are not controlling here. Fidelity further argues that the very limited discretion that Kling attrib-

utes to Fidelity—holding a small portion of the Stock Fund's assets in cash to meet liquidity needs, deciding whether to trade Harnischfeger common stock on the open market or perform cross-participant buy and sell orders without going into the market—do not establish ERISA fiduciary status as they are completely unconnected to the duties that Fidelity allegedly breached. *See Beddall,* 137 F.3d at 18 (fiduciary duty attaches in increments, and is not an all-or-nothing proposition).

The disposition of the motion to dismiss depends entirely on the interpretation of § 403(a)(1). The provision specifically exempts directed trustees from fiduciary status, and consequently from fiduciary liability, where "the plan expressly provides that the trustee [is] subject to the discretion of a named fiduciary who is not a trustee...." The First Circuit has interpreted this exemption liberally, and has declined to adopt the functional approach urged by Kling. As the court stated in *Cottrill,* "it is the driver, not the vehicle, that chooses the route." 74 F.3d at 22. In other words, clerical, mechanical, and ministerial duties, even when they involve the handling of assets, do not add up to discretionary authority if a named fiduciary is calling the shots. In *Beddall,* the First Circuit affirmed dismissal of a suit brought by former airline pilots against the trustee of their retirement plan based on the finding that, under the relevant agreements, the trustee had no discretion over the actions that formed the basis for the complaint. 137 F.3d at 20–21. The *Beddall* court also rejected the plaintiffs' argument that the trustee in question should be deemed to have volunteered itself as a fiduciary by virtue of having undertaken reporting responsibilities that exceeded its official mandate. *Id.* at 21.

■ The Plan documents and Trust Agreement at issue here, in no uncertain terms, designate Fidelity as a directed trustee, and thus exempt Fidelity from fiduciary status. However, this proposition is not sufficient to justify dismissing the complaint. Fidelity may still be found liable if a jury determines that Fidelity followed directions that were contrary to the Plan or to ERISA. In *Maniace v. Commerce Bank of Kansas City,* 40 F.3d 264 (8th Cir.1994), for example, the Eighth Circuit held that a directed trustee could not be deemed a fiduciary under the terms of the relevant agreement, but that "[n]otwithstanding [the trustee's] lack of fiduciary status, as an ERISA directed trustee, it may only act upon directions from the [named fiduciary] 'which are made in accordance with the terms of the plan and are not contrary to this chapter.'" *Id.* at 267 (quoting 29 U.S.C. § 1103(a)(1)). The *Maniace* court affirmed summary judgment for the defendant only upon concluding that the plaintiff had failed to establish that the conduct of the directed trustee at the named fiduciary's direction was not in accordance with the terms of the plan or was contrary to provisions of ERISA.

■ The parties dispute whether, for liability to attach under this aspect of § 403, it must be "clear on the face" of the directions that they are contrary to the Plan or to ERISA. The First Circuit has not addressed this aspect of § 403. In the absence of any controlling First Circuit precedent, I conclude that the language of the statute lays out no such standard. As stated in *Koch v. Dwyer,* denying a motion to dismiss in a case factually similar to the case at bar, "[n]either the statute nor the case law uses the 'clear on their face' standard...." 1999 WL 528181 at *9. Summing up the situation before it, the court observed:

> Though at first glance the direction to invest certain of the Plans' funds in JWP common stock would not appear to be

contrary to ERISA, the Complaint alleges that from at least May 1, 1991—before AET became Trustee—investment in JWP common stock was imprudent. An imprudent investment undertaken without adequate investigation constitutes a breach of fiduciary duty and is contrary to ERISA. If AET were aware that the direction to invest in JWP common stock was imprudent or that the fiduciaries' direction to make that investment was based on an inadequate investigation, then AET would not be immune from liability because it would have knowingly carried out a direction that was contrary to ERISA. What AET knew about the prudent of the investment in question, about the bases on which the fiduciaries directed AET to make that investment, and about the alleged fraud and conflicts of interest on the part of [various of the defendants] are factual questions inappropriate for resolution on a motion to dismiss.

*Id.* at *10 (citations omitted). Because Kling has alleged facts which, if proven, could lead a reasonable jury to conclude that Fidelity had followed directions that it knew to be contrary to the Plan or to ERISA, the motion to dismiss is DENIED.

It is so ordered.