United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2005

Charles R. Fulbruge III
Clerk

REVISED MAY 12, 2005

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 03-11087

---

MICHAEL MILOFSKY,
ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
AND ON BEHALF OF THE SUPER SAVER-A 401(K) CAPITAL ACCUMULATION PLAN
FOR EMPLOYEES OF PARTICIPATING AMR CORPORATION SUBSIDIARIES;
ROBERT WALSH,
ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
AND ON BEHALF OF THE SUPER SAVER-A 401(K) CAPITAL ACCUMULATION PLAN
FOR EMPLOYEES OF PARTICIPATING AMR CORPORATION SUBSIDIARIES,

Plaintiffs-Appellants,

VERSUS

AMERICAN AIRLINES, INC.;
JOHN DOES 1-10,
AS MEMBERS OF THE PENSION ASSET ADMINISTRATION COMMITTEE
OF THE SUPER SAVER-A 401(K) CAPITAL ACCUMULATION PLAN
FOR EMPLOYEES OF PARTICIPATING AMR CORPORATION SUBSIDIARIES;
JOHN DOES, 11-20,
AS MEMBERS OF THE PENSION BENEFITS ADMINISTRATION COMMITTEE
OF THE SUPER SAVER-A 401(K) CAPITAL ACCUMULATION PLAN
FOR EMPLOYEES OF PARTICIPATING AMR CORPORATION SUBSIDIARIES;
TOWERS PERRIN,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before KING, Chief Judge, SMITH and
    GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Michael Milofsky and Robert Walsh brought a class action under the Employee Retirement Income Security Act of 1974 ("ERISA") against American Airlines, Inc. ("American Airlines") and Towers Perrin, alleging breach of fiduciary duty with regard to a transfer of their pension plans from their former employer when it was acquired by the parent company of American Airlines. The district court dismissed the action. Finding no error, we affirm.

I.

Milofsky and Walsh were pilots for Business Express, Inc. ("BEX"), when it was acquired by AMR Eagle Holding Corporation, the parent company of American Eagle, Inc. ("American Eagle"). While employed with BEX, the plaintiffs participated in its individual account pension plan, called the "BEX Saving and Profit Sharing Plan" ("BEX Plan").

At the time of the acquisition, plaintiffs were informed that the balances in their accounts in the BEX Plan would be transferred to a comparable American Eagle § 401(k) plan, the "$uper $aver Plan." The notice regarding this transfer was sent to them by Towers Perrin, a benefits consulting firm hired by American Airlines to render administrative services in connection with the $uper $aver Plan. The notices informed the plaintiffs of when the account transfers would take place and of certain "blackout" periods during which they would not be permitted to have access to their accounts. Allegedly, the transfer of the accounts did not go smoothly, with the account transfers occurring weeks, and in some cases, months after the time written in the notices.

The plaintiffs sued under ERISA § 502-(a)(2), 29 U.S.C. § 1132(a)(2), alleging that American Airlines and Towers Perrin had violated fiduciary duties in misrepresenting how and when their accounts would be transferred to the $uper $aver Plan. They alleged that because of the failure to effect the transfer of the class members' account balances in a timely and prudent manner, the values of their accounts decreased because the assets remained invested in the floundering BEX Plan longer than expected. Plaintiffs requested actual damages to be paid to the $uper $aver Plan, to be allocated among their individual accounts proportionately to their losses resulting from the alleged breach.

The district court dismissed the action, finding that plaintiffs lack standing to sue under § 502(a)(2) and that they are barred from suing in federal court because they failed to exhaust administrative remedies. The court also found that plaintiffs could not sue Towers

2

Perrin because they did not allege specific facts that would establish that it was an ERISA fiduciary. The dismissal is the subject of the instant appeal.

## II.

We review action on a Federal Rule of Civil Procedure 12(b)(6) motion *de novo. See, e.g., Blansett v. Cont'l Airlines, Inc.,* 379 F.3d 177, 179 (5th Cir.), *cert. denied*, 125 S. Ct. 672 (2004). We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiffs. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "At the same time, the plaintiffs must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim." *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "We will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

## III.

The plaintiffs argue that the district court erred in finding that they inadequately allege that Towers Perrin is a fiduciary under ERISA. According to ERISA § 3(21), "a person is a fiduciary with respect to [an ERISA] plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii).[1] The term "fiduciary" must be liberally construed to implement the reme-

dial purpose of ERISA.[2] Third-party administrators who perform merely administrative duties, however, are not fiduciaries under ERISA.[3] In determining whether a party is a fiduciary for the purpose of maintaining an ERISA action against it, we must focus on whether it acted as a fiduciary with respect to the specific acts or omissions alleged to have breached its fiduciary duties.[4]

The complaint fails to identify any specific discretion or decisionmaking authority that Towers Perrin had with respect to the alleged breaches of fiduciary duty. Taking all alleged facts as true, the extent of Towers Perrin's involvement is that it provided plaintiffs with the notices that contained the alleged misrepresentations.[5] There is no allegation that Towers Perrin exercised discretion or control regarding the content of the notices, the transfer of funds from the BEX Plan to the $uper $aver Plan, the length of the blackout periods, or the investment of the accounts. The transmission

---

[1] *See also Reich v. Lancaster,* 55 F.3d 1034, 1049 (5th Cir. 1995) ("To be fiduciaries, such persons must exercise discretionary authority and control that amounts to actual decision making power.")

---

[2] *See Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002).

[3] *See Reich*, 55 F.3d at 1047.

[4] *Pegram v. Herdich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *see also Bannistor,* 287 F.3d at 401 ("The phrase 'to the extent' [in 29 U.S.C. § 1002(21)(A)] indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control.")

[5] *See* Compl. ¶¶ 21-24.

3

of notices and forms advising plan participants of their rights and options under a plan is nothing more than an administrative or ministerial service, which is insufficient to elevate Towers Perrin to the status of fiduciary under ERISA for purposes of this lawsuit.[6]

The only other references the complaint makes to Towers Perrin's status are *conclusional* allegations that it acted as a fiduciary.[7] Such allegations are insufficient to allow this claim to survive a rule 12(b)(6) motion to dismiss.[8]

---

[6] The Department of Labor's interpretation of ERISA § 3(21) supports the notion that these kinds of activities are ministerial for the purpose of determining fiduciary status. *See* Dept. of Labor, Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8, D-2 (2002) (listing "[p]reparation of communications material" and "[o]rientation of new participants and advising participants of their rights and options under the plan" as examples of ministerial services that do not make a party a fiduciary, because such a person "does not have discretionary authority or discretionary control respecting management of the plan").

[7] Compl. ¶ 16 ("At all relevant times, Towers Perrin has been a fiduciary of the $uper $aver Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), because it exercised discretion over the administration of the $uper $aver Plan"); *id.* ¶ 31 ("At all relevant times, defendant[] . . . Towers Perrin acted as [a] fiduciar[y] under Section 3(21)(A) of ERISA"); *id.* ¶ 35 ("At all relevant times, American . . . and Towers Perrin were co-fiduciaries.")

[8] *See Kane Enters.*, 322 F.3d at 374. Other courts have held that failing to plead specific facts establishing that a defendant was a fiduciary with respect to the plan and the acts or omissions in question requires dismissal. *See, e.g., Custer v.*
(continued...)

## IV.

Plaintiffs contend the district court erred in dismissing their complaint for want of standing under ERISA § 502(a)(2), which confers standing on plan participants to bring private causes of action to seek "appropriate relief" under ERISA § 409. That section subjects plan fiduciaries to liability for breaches of duty,[9] providing that a fiduciary that breaches any of its duties under the Act "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a).

In *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), the Court interpreted the language of § 409 to permit actions only in which the sought-after recovery benefits the plan as a whole, as distinguished from an individual beneficiary.[10] In *Matassarin v. Lynch,* 174 F.3d 549 (5th Cir. 1999)*,* we reiterated the standing requirement established by *Russell,* that suits under ERISA § 502(a)(2) inure to

---

[8](...continued)
*Sweeney*, 89 F.3d 1156, 1161-63 (4th Cir. 1996); *Metro. Life Ins. Co. v. Palmer,* 238 F. Supp. 2d 826, 831 (E.D. Tex. 2002).

[9] Section 404 of ERISA, 29 U.S.C. § 1104, details the duties of an ERISA fiduciary.

[10] *Russell*, 473 U.S. at 140 ("[R]ecovery for a violation of § 409 inures to the benefit of the plan as a whole."); *id.* at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned . . . with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."); *see also Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (noting that plaintiff could not proceed under § 502(a)(2) because "that provision, tied to § 409, does not provide a remedy for individual beneficiaries").

the benefit of the plan as a whole.[11]

Despite plaintiffs' contrary claims, this suit concerns individualized relief for the particularized harm suffered by a subset of plan participants and does not seek to vindicate the rights or interests of the plan as a whole. The district court properly observed that, apart from conclusional claims that the suit is on behalf of the plan, all the specific allegations deal only with the individual accounts held by the plaintiff class members.[12]

As in *Matassarin*, where we dismissed a § 502(a)(2) claim for lack of standing, the plaintiffs have alleged breaches of fiduciary duty that uniquely concern only their individual accounts.[13] The complaint contains no allegation that defendants violated fiduciary duties *vis-á-vis* the entire plan or that the $uper $aver Plan itself sustained losses for which it, and

not merely individual participants and beneficiaries, could obtain relief.

We reject the argument that the claim inures to the benefit of the plan as a whole just because the complaint requests that damages be paid to the plan instead of directly to the respective plaintiffs. The plaintiffs attempt to distinguish *Russell* and *Matassarin,* highlighting the fact that in those cases, the complaint requested that damages be paid directly to the individuals who are aggrievedSSmaking it akin to a claim for benefitsSSwhereas the plaintiffs in this case seek proceeds to be paid to the plan. Although the complaint demands payment to the $uper $aver Plan as an entity, it specifically requests that the damages be "allocated among plaintiffs' *individual* accounts proportionate to *plaintiffs' losses."*[14]

In an individual account plan, such as the $uper $aver Plan, a participant has rights to the plan based "solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to that participant's account." 29 U.S.C. § 1002(34). Consequently, because plaintiffs demand that any relief be channeled only to the individual accounts of the plaintiff class members, non-class members would receive no benefit as a result of a successful suit, because they would not receive additional funds in their accounts, apart from the attenuated possibility that class members might forfeit their balances at some future, unspecified time.

Legal title may be formally in the hands of

---

[11] *See Matassarin*, 174 F.3d at 566 (stating that the "'loss to the plan' language . . . limits claims to those that inure to the benefit of the plan as a whole and not to the benefit only of individual plan beneficiaries") (citing, *inter alia*, *Russell*, 473 U.S. at 140-42).

[12] Compl. ¶ 12 ("[A]ll the *individual accounts of plaintiffs and other members of the Class* sustained damages") (emphasis added); *id.* ¶ 38 ("As a result of these acts and omissions, the value of the *plaintiffs' individual accounts* under the $uper $aver Plan, immediately following the transfer, was less than what it would have been had the money been transferred when promised.") (emphasis added).

[13] *Matassarin,* 174 F.3d at 566 ("Most of the ERISA breaches that Matassarin alleges concern only her individual account or, at most, those of the sixty-seven Plan participants who were offered lump-sum distributions.")

[14] Compl. ¶ 14 (emphasis added).

5

the trustees,[15] but individual account holders retain a beneficial interest only in their respective account balances. Although proceeds would be paid into the plan as an entity, the fact that they are channeled exclusively into the accounts of the plaintiff class benefits only a subsection of the plan, which cannot be said to benefit the plan as a whole as required under § 502(a)(2). Because this claim does not otherwise seek to vindicate rights of the entire plan—given that the alleged fiduciary breaches occurred only as to the members of the plaintiff class and were not directed to the whole plan membership—this claim does not benefit the entire plan.

Similarly, the fact that the total assets of the plan—defined as the sum of the values of the individual accounts—would increase as a result of a successful suit does not mean that recovery inures to the benefit of the entire plan. Although potential recovery might benefit that substantial number of individual accounts, adopting that logic would dramatically expand standing under § 502(a)(2) to circumstances in which only a single plaintiff alleges that his account was damaged as a result of a breach of fiduciary duty that was uniquely targeted at him and no other plan participants.

We cannot adopt an interpretation that would allow a plaintiff, merely by praying that relief pass through the plan into individual accounts, to eviscerate the standing requirement imposed by § 502(a)(2) by engaging in a legal fiction that the suit benefits the plan as whole. The increase would be of no benefit to participants outside the plaintiff class, either by augmenting the value of their accounts or by vindicating their rights as to fiduciary breaches directed toward them.[16]

In this regard, we take special note of the fact that in *Russell*, 473 U.S. at 141, the Court was careful to distinguish what it called "the entire plan," on the one hand, from what it termed "the rights of an individual beneficiary," on the other hand, and to require that an individual claim benefit the former. Each of the plaintiffs has "rights" as a beneficiary. The point of *Russell* is that a plaintiff who seeks to vindicate those rights, whether by receiving a direct payment or by having his individual account credited with an additional sum certain, may not use the vehicle of § 502(a)(2) unless his claim, if successful, will benefit not just himself, but the whole plan.

It is no accident, therefore, that the Supreme Court has required that a suit benefit not just the plan, but the plan "as a whole." *Russell*, 473 U.S. at 140. That is to say, the statute confers only "remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 141. Accordingly, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the

---

[15] ERISA § 403(a), 29 U.S.C. § 1103(a) ("[A]ll assets of an employee benefit plan shall be held in trust by one or more trustees.")

[16] We stop short, however, of saying that there is no standing unless all plan participants would benefit from the litigation. The central question, in the context of an individual account plan, is whether the suit inures to the benefit of the *plan*, which occurs whenever all plan participants would directly benefit (by all having increased balances in their individual accounts) or when the suit seeks to vindicate the rights of the plan as an entity when alleged fiduciary breaches targeted the plan as a whole—whether the suit is filed by all plan participants or only a subset thereof.

6

possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* Any fair construction of *Russell* must dwell on the Court's intentional and repeated reference not only to the plan, but to the entire plan, the plan as a whole.

This distinction between relief for the plan and relief for individuals is paramount.[17] Where, as here, a small segment of the employees bring a claim that, by its very nature, can only benefit them, it cannot be said to help the plan in the sense that the Supreme Court requires.

It is easy to conclude that the instant claim does not meet that test. We need not speculate on every possible situation in which a suit that demands relief beneficial to a large proportion of the beneficiaries can reasonably be said to "protect the entire plan." Instead, it is enough to say, for present purposes, that the specific relief here requested, affecting only 218 individual accounts out of a much larger plan, is much too narrow to qualify.[18]

The Supreme Court's insistence that the

---

[17] "[Section] 409 is more fairly read in context as providing remedies that would protect the entire plan rather than individuals . . . ." *Russell*, 473 U.S. at 150 (Brennan, J., concurring) (internal quotation marks omitted).

[18] The number of potential recipients here compares favorably to the sixty-seven participants in *Matassarin*. There, in a situation like the current one, this court noted that because of the specific nature of the claim, tailored to only a small portion of the account holders, the plaintiff "has failed to allege any way in which the defendants' actions caused a loss to the Plan as a whole as envisioned in § 502(a)(2)." *Matassarin*, 174 F.3d at 566.

suit seek to "benefit [] the plan as a whole," *Russell*, 473 U.S. at 140, highlights the flaw in plaintiffs' heavy reliance on *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), in which the court allowed a subclass of beneficiaries to sue for breach of fiduciary duty under § 502(a)(2) over the defendants' argument that for standing to exist, the breach must harm all participants. There, suit was brought by a subset of all plan participants, a subset consisting of members who had been transferred from one company to another.

In *Kuper*, 66 F.3d at 1452, the defendants "claim[ed] that an action under [] § 1109 must be brought on behalf of a plan as a whole and that a claim brought by a subclass of plan participants fails to satisfy this requirement." The court began its analysis by correctly stating that "ERISA does not permit recovery by an individual who claims a breach of fiduciary duty. Instead, . . . any recovery . . . must go to the plan." *Id.* at 1452-53 (citations omitted). The distinction drawn in *Kuper* is "between a plaintiff's attempt to recover on his own behalf and a plaintiff's attempt to have the fiduciary reimburse the plan." *Id.* at 1453.

The court went awry, however, in then rejecting "[d]efendants' argument that a breach must harm *the entire plan* to give rise to liability under § 1109." *Id.* (emphasis added). The court's reasoning is directly contrary to the insistence in *Russell* on "benefit to the plan as a whole," *Russell*, 473 U.S. at 140, and contravenes the Court's emphasis on "remedies that would protect the entire plan," *id.* at 141.

We can only guess that the *Kuper* court was unaware of *Russell* or overlooked this crucial language in fashioning its opinion. In any event, *Kuper*, being from another circuit,

is not binding, and we cannot find persuasive a case that runs afoul of the Supreme Court's requirements.

Moreover, *Kuper* appears to drive an artificial wedge between the concept of "the entire plan," which it openly rejects despite the Supreme Court's blessing, and the notion of "the plan as a whole," which it appears to embrace. After rejecting, as we have stated, the defendants' argument that a breach must harm "the entire plan," the court inexplicably closes with the comment that a ruling for plaintiffs "would benefit the Plan as a whole [and] would cure any harm that the Plan suffered." *Kuper*, 66 F.3d at 1453. By this latter statement, taken alone, the opinion appears to be internally inconsistent, because the court seems to be adopting the correct test, i.e., that a successful claim must help the "plan as a whole" after discarding the seemingly identical "entire plan" test.

In the alternative, the *Kuper* court's closing observation renders irrelevant its rejection of the "entire plan" requirement, because the court is saying that under the facts of the case, the claim meets the "plan as a whole" test in any event. By this specific mode of analysis, the court's rejection of the "entire plan" test is arguably rendered *dictum*. To the extent it is a holding, however, it flies in the face of the Supreme Court's directive, and we decline to follow it for the reasons explained.[19]

Similarly, the plaintiffs' citation of *Smith v. Snydor*, 184 F.3d 356 (4th Cir. 1999), is inapposite, because there the plaintiffs sought disgorgement of profits, rescission of a stock sale, and reinstatement of a "put" optionSS relief that would benefit all participants of the plan and thus inure to the benefit of the plan as a whole.[20] Finally, *Steinman v. Hicks,* 352 F.3d 1101 (7th Cir. 2003), did not involve a subset of participants, but rather a claim that there was a breach of fiduciary duty for failure to diversify plan assets, a claim that inured to the benefit of the entire plan because the breach targeted all plan participants. The claim in this case is distinguishable because it pertains only to alleged misrepresentations and untimely transfers made with respect to a specific subclass of participants, the former BEX pilots who were transferred to American Eagle.[21]

Contrary to plaintiffs' assertions, denying standing here will not close off all claims by beneficiaries of individual account plans against fiduciaries for violations of their duties. At the very least, standing exists under ERISA § 502(a)(3), under which participants may directly seek *equitable* relief for any practice that violates any term of ERISA or the plan. Section 502(a)(3) makes no reference to § 409, which the Court interpreted in *Russell*, 473 U.S. at 140-41, to engraft a standing requirement that the suit would benefit the plan as a whole under § 502(a)(2).

Section 502(a)(3) is available for individualized relief such as that sought in this case.[22]

---

[19] Because of the arguable conflict with the Sixth Circuit, this opinion has been pre-circulated to the active judges of this court in accordance with our usual policy. *See Estate of Farrar v. Cain*, 941 F.2d 1311, 1316 n.22 (5th Cir. 1991).

[20] *Smith*, 184 F.3d at 363 ("[I]t does not solely benefit the individual participants.").

[21] *See* Compl. ¶¶ 20-28, 34.

[22] *Varity,* 516 U.S. at 510 ("The words of subsection (3)SS'appropriate equitable relief' to 're-
(continued...)

8

Though that subsection explicitly limits recovery to equitable relief and might deny the plaintiffs the particular remedy they desire,[23] that is all that is available under the remedial scheme designed by Congress.[24] Despite the policy arguments the plaintiffs advance, "[o]ur task is to apply the text, not to improve upon it."[25]

In summary, plaintiffs lack standing because this case in essence is about an alleged particularized harm targeting a specific subset of plan beneficiaries, with claims for damages to benefits members of the subclass only, and not the plan generally. This is the kind of case that, under *Russell* and its progeny, falls outside § 502(a)(2), despite the formalistic distinction that recovery from the suit would be paid into individual accounts and not directly to plaintiffs. Even though the complaint may allege that damage occurred to the plan as a whole, we agree with the district court when it saw the essence of the complaint as a claim decrying particularized harm to individual plaintiffs who seek only to benefit themselves and not the entire plan as required by § 502-(a)(2).[26]

AFFIRMED.

---

[22](...continued) dress' any 'act or practice which violates any provision of this title'SSare broad enough to cover individual relief for breach of a fiduciary obligation."); *Matassarin*, 174 F.3d at 556 ("A plan beneficiary may bring a § 502(a)(3) action against an ERISA fiduciary based on loss to the individual beneficiary as well as based on loss to the plan as a whole"); *Steinman*, 352 F.3d at 1102 ("[S]ection 502(a)(3) is the vehicle for suits by individuals who are seeking relief just on their own behalf rather than on behalf of the plan.").

[23] The Supreme Court has indicated that compensatory and punitive damages may not be available under ERISA § 502(a)(3). *See Varity*, 516 U.S. at 510 (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255, 256-58 (1993)).

[24] *Aetna Health, Inc. v. Davila,* 124 S. Ct. 2488, 2499 (2004) ("The limited remedies available under ERISA are an inherent part of the careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.") (internal citations omitted); *Great W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ("We have observed repeatedly that ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefits system. We have therefore been especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text.") (internal citations omitted).

---

[25] *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989).

[26] Because we affirm the dismissal for want of standing, we need not consider whether the plaintiffs are required to exhaust administrative remedies before bringing suit.

KING, Chief Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's unprecedented holding that participants in an individual account plan lack standing under § 502(a)(2) of ERISA to recover losses to the plan under § 409 of ERISA for a fiduciary breach unless all plan participants would benefit from the litigation. ERISA governs two types of pension plans: (1) individual account plans such as the 401(k) plan at issue here; and (2) defined benefit plans.[1] See 29 U.S.C. 1002. At the end of 2003, over $ 2.3 trillion in assets were held in individual account plans, representing well over half of all pension plan assets in the United States.[2] The majority's holding means that those participants in individual account plans who are unfortunate enough to be forced to litigate in the Fifth Circuit will be unable to recover monetary losses to the plans caused by fiduciary breaches when fewer than all plan participants would benefit from the litigation, thereby limiting recovery to the equitable relief available under § 502(a)(3) of ERISA. To deprive plan participants in such circumstances of a

---

[1]  Individual account plans provide each plan participant with an individual account, and benefits under such plans are determined by the amount contributed to a participant's account and by any applicable income, expenses, gains, and losses. See 29 U.S.C. 1002(34). Examples of individual account plans, which are also referred to as defined contribution plans, are 401(k) plans, 403(b) plans, employee stock ownership plans, and profit sharing plans. Defined benefit plans are generally defined as pension plans other than individual account plans. See 29 U.S.C. 1002(35).

[2]  FED. RES. BD., FLOW OF FUNDS ACCOUNTS OF THE UNITED STATES: FLOW AND OUTSTANDINGS THIRD QUARTER 2004, FED. RES. STATISTICAL RELEASE Z.1, at 113 (Dec. 9, 2004).

§ 409 remedy for breach of fiduciary duty effectively nullifies Congress's intent to provide a high level of protection to any and all plan participants from fiduciary abuse. The majority's holding finds no support in the two cases it cites, and it squarely conflicts with the one other circuit court to have directly addressed this issue.

**A. Russell and Matassarin Do Not Support the Majority's Holding**

The majority relies on two cases in support of its holding, Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985), and Matassarin v. Lynch, 174 F.3d 549 (5th Cir. 1999). Both of these cases are distinguishable from the present case, and neither justifies the majority's conclusions.

In Russell, Doris Russell, a participant in two employee benefits plans covered by ERISA, became disabled and began receiving plan benefits. Russell, 473 U.S. at 136. On October 17, 1979, her benefits were terminated. Id. On November 27, 1979, however, they were reinstated, and her retroactive benefits were paid in full. Id. Russell claimed that the interruption of benefit payments to her forced her disabled husband to cash out his retirement savings, which, in turn, allegedly aggravated her psychological and physical ailments. Id. at 137. Accordingly, she sued the plans' fiduciaries for extra-contractual punitive damages, as well as damages for mental and emotional distress, to be paid directly to her. Id. at 136-38. The Supreme Court held

11

that Russell could not bring her private right of action for compensatory and punitive relief under § 502(a)(2) because: (1) § 502(a)(2) only permits lawsuits where the damages would inure to the benefit of the plan; and (2) ERISA does not authorize the direct recovery of extra-contractual damages by a plan participant.  Id. at 140-41, 144-45, 148.

Russell is distinguishable from the present case.  First, Russell requested damages payable directly to her, whereas the plaintiffs in the present case request damages payable to the plan.  The majority dismisses this distinction as merely "formalistic," noting that the damages in the present case would ultimately be distributed to the plaintiffs' individual plan accounts.  Majority Opinion, 6, 9.  Those courts that have confronted similar scenarios, however, have reached the opposite conclusion, holding that fiduciary breach claims can be brought under § 502(a)(2) when the relief would ultimately benefit the individual plan participants, so long as the relief flows directly from the breaching fiduciaries to the plan, rather than from the breaching fiduciaries to the plaintiffs' personal pocketbooks.  See, e.g., Smith v. Snydor, 184 F.3d 356, 363 (4th Cir. 1999) (holding that the plaintiffs' fiduciary breach claim under § 409 was not precluded even though they ultimately stood to benefit and holding that any recovery must be paid directly to the plan and not to individual participants); Rankin v. Rots, 220

12

F.R.D 511, 520 (E.D. Mich. 2004) (finding standing to sue because any damages for a breach of fiduciary duty would initially go to the plan, even if the damages would ultimately flow to the accounts of plan members); see also Colleen E. Medill, Stock Market Volatility and 401(k) Plans, 34 U. OF MICH. J. L. REFORM, 469, 538-39 (2001) [hereinafter Stock Market Volatility] ("The better judicial interpretation . . . is to view the relief as flowing to the plan in accord with section 502(a)(2), so long as the monetary award is initially allocated to each participant's plan account rather than to his personal pocketbook.").

Russell is also distinguishable from the present case because Doris Russell never alleged that the plan itself lost value, but instead claimed that she personally suffered emotional and physical harm due to the interruption of her benefits. See Russell, 473 U.S. at 136-37. Conversely, the plaintiffs in the present case have alleged that their individual accounts decreased in value and that, accordingly, the value of the plan's assets as a whole decreased. Thus, Russell did not involve a diminution in the amount of the plan's assets, whereas the present case does involve an alleged diminution of the plan's assets held in trust.

Finally, Russell never reached the conclusion that the majority reaches, i.e., that standing can exist under § 502(a)(2) only if all plan participants would benefit from the litigation.[3] In

_____

[3] The majority states in a footnote that there is one limited

(continued...)

13

stead, it only held that a single plan participant, seeking individual recovery for extra-contractual damages payable directly to her, could not proceed with her lawsuit under § 502(a)(2).  Russell, 473 U.S. at 134. Accordingly, the majority's holding goes far beyond the holding of Russell.[4]

In Matassarin, the plaintiff Patricia Matassarin was, by virtue of a qualified domestic relations order (the "QDRO") entered into as part of her divorce, a beneficiary in an employee stock ownership plan (the "ESOP") offered by Great Empire Broadcasting, Inc. Matassarin, 174 F.3d at 556.  Matassarin's account, like that of approximately sixty-seven other plan participants (most were terminated employees), was a segregated account.  Id. at 556-57. In May 1995, Great Empire decided to pay lump-sum distributions

---

[3](...continued)
exception to its holding that standing exists under § 502(a)(2) only if all plan participants stand to benefit: when the suit "seeks to vindicate the rights of the plan as an entity when alleged fiduciary breaches targeted the plan as a whole . . . ."  Majority Opinion, 6 n.16.  The majority cites no cases in support of this exception, nor does it explain how a court should determine if an alleged fiduciary breach targeted the plan as a whole. Moreover, the plaintiffs in the present case appear to allege a breach targeted at the plan as a whole when they claim that the defendants "breached their fiduciary duties to the plaintiffs and the $uper $aver Plan as a whole by failing to effectuate the timely transfer of plaintiffs' account balances from the BEX Plan as promised in numerous representations to plaintiffs . . . ."  Compl. ¶ 34.

[4]  The majority correctly notes that Russell distinguishes between relief for individuals and relief for the plan as a whole.  Majority Opinion, 6-7.  Russell does not, however, stand for the proposition that the "plan as a whole" is synonymous with "all participants of the plan," and several courts have rejected this definition of the "plan as a whole."  See Kuper v. Iovenko, 66 F.3d 1447, 1453 (6th Cir. 1995); Kling v. Fidelity Management Trust Co., 270 F. Supp. 2d 125-27 (D. Mass. 2003); see also Stock Market Volatility at 538-39.

14

to the ESOP's segregated account holders.  Id. at 557.  In accordance with the terms of the QDRO, Great Empire calculated the value of Matassarin's account by using the stock price for Great Empire shares on the date of Matassarin's divorce.  Id. at 559, 564.  Subsequently, Great Empire concluded that Matassarin was not entitled to a distribution of benefits until the date of her ex-husband's retirement.  See id. at 565.  Matassarin sued the ESOP's fiduciaries, alleging, inter alia, that they breached their fiduciary duties under ERISA, that her account balance was miscalculated, and that she was entitled to a distribution of her benefits.  See id. at 557, 563-70.  The district court granted summary judgment in favor of the defendants, and this court affirmed its decision in all respects.  Id. at 571.  In doing so, this court stated that Matassarin's claim that plan fiduciaries had breached their duties by failing to conform the ESOP to the requirements of the tax code, thereby jeopardizing the plan's tax qualified status, was properly brought under § 502(a)(2) because it involved the interest of the plan as a whole.  Id. at 565-66.  Nevertheless, the court found that this claim failed because there were no damages.  Id. at 566.  The court then stated that Matassarin's remaining fiduciary-breach claims under § 502(a)(2) "concern only her individual account or, at most, those of the sixty-seven Plan participants who were offered lump-sum distributions."  Id.  While the court did not explain why this was so, it

affirmed the district court's grant of summary judgment against Matassarin on her § 502(a)(2) claims because she "failed to allege any way in which the defendants' actions caused a loss to the Plan as a whole as envisioned in § 502(a)(2)." Id.

Matassarin, like Russell, is distinguishable from the present case. First, Patricia Matassarin's mission, specifically her claim for relief, sought only a distribution of her benefits to her, whereas the plaintiffs in the present case only seek damages that would be paid to the plan and then distributed within it to individual plan accounts. Second, Matassarin, like Russell, did not involve a diminution of the plan's assets, while the present case does involve the alleged diminution of the plan's assets held in trust. This follows from the fact that Matassarin never alleged that the total amount of the plan's assets was reduced by any of the alleged fiduciary breaches, but instead claimed that several plan participants, who were also plan fiduciaries, bene-fitted by being able to repurchase Great Empire shares at below market value. See id. at 566-70. Third, Matassarin, unlike the plaintiffs in the present case, did not claim that the defendants mishandled plan assets causing damage to the plan as a whole, but rather alleged that various members of the plan treated her differently from other plan members and benefitted at her ex-pense. See Kling v. Fidelity Management Trust Co., 270 F. Supp. 2d 121, 126 (D. Mass. 2003) (distinguishing Matassarin from a

case similar to the present one on the basis that <u>Matassarin</u> involved a plaintiff "who had been treated differently than other participants in the same plan"). Finally, <u>Matassarin</u> never stated that standing can only exist under § 502(a)(2) if <u>every</u> plan participant would benefit from the litigation. Accordingly, the majority's holding goes beyond the holding of <u>Matassarin</u> in the same way that it goes beyond the holding of <u>Russell</u>.

**B. All Cases That Are Directly on Point Permit Suits by a Subset of Plan Participants Under § 502(a)(2)**

While <u>Russell</u> and <u>Matassarin</u> are distinguishable from the present case, several cases, including one circuit court case, have been decided that are directly on point. In all of these cases, courts that have considered whether a subset of plan participants can sue for a fiduciary breach under § 502(a)(2) have held that such suits are permissible, thereby reaching the exact opposite conclusion from that reached by the majority. For instance, the facts of <u>Kuper v. Iovenko</u>, 66 F.3d 1447 (6th Cir. 1995), are extremely similar to those of the present case. <u>Kuper</u>, like the present case, involved a delay in transferring assets of an individual account plan to a takeover employer. In <u>Kuper</u>, Quantum Chemical Corporation ("Quantum"), which maintained a benefits plan for its employees with 401(k) and ESOP components, sold one of its divisions to Henkel Corporation. As part of the sale, Quantum and Henkel agreed to a trust-to-trust transfer of the plan assets of those Quantum

employees who would work for Henkel after the sale date. Id. at 1450-51. The transfer took eighteen months, and during this period the price of the Quantum stock held in the ESOP declined nearly eighty percent. Id. According to the plaintiffs (the subset of Quantum plan participants whose plan assets were transferred), the Quantum fiduciaries were responsible for the delay and breached their fiduciary duties by not diversifying or liquidating the plaintiffs' ESOP assets in order to minimize the harm caused by the delay. The defendants responded that the plaintiffs could not sue them for relief under § 409 because the plaintiffs only comprised a subset of the Quantum plan's participants. The Sixth Circuit disagreed, stating:

> We conclude that plaintiffs' position that a subclass of Plan participants may sue for a breach of fiduciary duty is correct. Defendants' argument that a breach must harm the entire plan to give rise to liability under [§ 409] would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants. Such a result clearly would contravene ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law."

Kuper, 66 F.3d at 1453.[5] Similarly, in Kling, the court stated:

---

[5] The majority suggests that Kuper is internally inconsistent because it rejects the concept that the "entire plan" must be harmed but allows the litigation to proceed on the basis that "the plan as a whole" would benefit. Majority Opinion, 8. Kuper is not inconsistent. When rejecting the claim that the "entire plan" must be harmed for the litigation to proceed, the court was rejecting the claim that all plan participants, as opposed to a subset of plan participants, must stand to benefit from the litigation in order for it to proceed. See Kuper, 66 F.3d at 1453-54. Conversely, when the court later stated that allowing the litigation to proceed would "benefit the Plan as a

(continued...)

> [The plaintiff] seeks a remedy for only a subset of the plan
> participants [under § 502(a)(2)] . . . . [The plaintiff] does
> not sue on behalf of the Plan . . . . That the harm alleged
> did not affect every single participant does not alter this
> conclusion.  To read such a requirement into § 409 that the
> harm alleged must affect every plan participant would . . .
> "insulate fiduciaries who breach their duty so long as the
> breach does not harm all of a plan's participants."

Kling, 270 F. Supp. 2d at 125-27 (citing Kuper, 66 F.3d at 1453).
The Eighth Circuit likewise has noted that it would "not hesitate
to construe 'losses to the plan' in [§ 409] broadly in order to
further the remedial purposes of ERISA . . . ."  Physicians
HealthChoice, Inc. v. Trs. of Auto. Employee Benefit Tr., 988
F.2d 53, 56 (8th Cir. 1993).  Additionally, one commentator,
arguing that a subset of plan participants should be allowed to
bring a fiduciary breach suit under § 502(a)(2), has written:

> If the federal court rules that a fiduciary breach

---

[5](...continued)
whole[,]" it did not (and could not) mean that every individual plan
account benefitted, but instead likely meant that the total plan assets
would benefit by allowing the litigation to proceed.  The majority also
states that Kuper's rejection of the "entire plan" requirement may be
dictum because of its holding that the plan met the "plan as a whole"
test.  Majority Opinion, 8.  Kuper's rejection of the "entire plan"
requirement was not dictum because it was essential to the court's
decision (i.e., had the court accepted the defendants' argument that the
litigation could only proceed if all plan participants stood to benefit,
it could not have ruled as it did).  See Gochicoa v. Johnson, 238 F.3d
278, 287 n.11 (5th Cir. 2000) ("A statement should be considered dictum
when it could have been deleted without seriously impairing the
analytical foundations of the holding--[and], being peripheral, may not
have received the full and careful consideration of the court that
uttered it." (internal quotation marks omitted)); see also McLellan v.
Mississippi Power & Light Co., 545 F.2d 919, 925 n.21 (5th Cir. 1977).
Accordingly, the Sixth Circuit clearly concluded in Kuper that a subset
of plan participants could sue for a breach of fiduciary duty under §
502(a)(2)--a conclusion that the majority's holding would prohibit.  See
Kuper, 66 F.3d at 1453.

affecting fewer than all of the plan's participants can only be remedied under section 502(a)(3) [and not under section 502(a)(2)], the limited traditional equitable remedies available under this section may leave this subset of participants without any relief at all . . . . Such a result--a fiduciary breach with no available remedy--nullifies the fiduciary responsibility provisions of ERISA. Such an interpretation sends a clear signal to the employee benefits community that employers may disregard their statutory obligations with impunity. The long-term policy consequence is likely to be a significant undermining of the effectiveness of 401(k) plans in providing retirement income security.

Stock Market Volatility at 538-39.

By permitting suits by a subset of plan participants under § 502(a)(2) for damages payable to the plan to proceed, this court would ensure that plan participants are not left without a remedy when plan fiduciaries harm the plan by breaching their duties.[6] For this reason, and because no authority supports the majority's denial of standing to the plaintiffs, I would find that the plaintiffs have standing to pursue their claims under § 502(a)(2).

**C. The District Court Erred by Requiring Exhaustion of Administrative Remedies**

Because I would find that the plaintiffs have standing to sue

---

[6] The majority contends that denying standing to the plaintiffs would not foreclose claims by them against the plan's fiduciaries for violating their duties, since standing could still exist under § 502(a)(3). Majority Opinion, 9. However, a plan participant can only sue for equitable relief under § 502(a)(3), whereas a plan participant can sue for monetary relief under § 502(a)(2). See 29 U.S.C. 1109(a); Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993). Accordingly, as the majority notes, § 502(a)(3) would deny the plaintiffs the particular remedy they desire. Majority Opinion, 9.

under § 502(a)(2), I must address the district court's holding that the plaintiffs' § 502(a)(2) claims should be dismissed for failure to exhaust administrative remedies.[7]  I find that the plaintiffs, asserting breaches of fiduciary duty rather than making benefits claims, were not required to exhaust administrative remedies before pursuing their § 502(a)(2) claims in federal court.

ERISA does not require the exhaustion of administrative remedies before a plan participant can file a lawsuit.  Nevertheless, § 503 of ERISA does require plans to have procedures in place for the review of benefits claims brought by plan participants.  See 29 U.S.C. § 1133.  In line with § 503, this court has held that a plaintiff must exhaust her administrative remedies before bringing a benefits claim in federal court.  Chailland v. Brown & Root, Inc., 45 F.3d 947, 950 n.6 (5th Cir. 1995); Denton v. First Nat'l Bank of Waco, Tex., 765 F.2d 1295, 1301-02 (5th Cir. 1985).  This court has never held, however, that a plan participant must exhaust her administrative remedies before bringing a fiduciary breach claim in federal court, and the rationale for requiring the exhaustion of administrative remedies regarding benefits claims does not apply to fiduciary breach claims.[8]

---

[7]  The majority does not address this issue because it disposes of the plaintiffs' § 502(a)(2) claims for a lack of standing.

[8]  In its opinion, the district court cited Simmons v. Willcox, 911 F.2d 1077, 1081 (5th Cir. 1990), for the proposition that this circuit

(continued...)

21

When a plan participant files a claim for benefits with a plan pursuant to § 503 of ERISA, the plan reviews her claim and decides whether or not to pay her the benefits, a process that, according to this court, minimizes the number of claims filed in federal court. See Hall v. Nat'l Gypsum Co., 105 F.3d 225, 231 (5th Cir. 1997). This court has stated that the common law exhaustion requirement in this circuit "presuppose[s] that the grievance upon which the lawsuit is based arises from some action of a plan covered by ERISA, and that the plan is capable of providing the relief sought by the plaintiff." Chailland, 45 F.3d at 950. This court has also stated that when the action arises from some entity other than the plan and the plan is incapable of providing relief, exhaustion "would make absolutely no sense and would be a hollow act of utter futility." Id.

When a plan participant brings a fiduciary breach claim, the plan cannot pay the requested damages to the participant, as it could with a benefits claim, since § 410 of ERISA prohibits a plan from relieving a fiduciary of liability for a breach of her

[8](...continued)
has held that exhaustion of administrative remedies is required for fiduciary breach claims. In fact, in Simmons, this court held that the plaintiff's "fiduciary breach" claim was actually a disguised benefits claim, and it therefore concluded that the plaintiff could not avoid § 503's exhaustion requirement by mislabeling it as a fiduciary breach claim. In the present case, the plaintiffs have not requested the distribution of any benefits, but have only raised a pure fiduciary breach claim for damages to the plan. Therefore, because this case does not involve a disguised benefits claim, but instead involves a legitimate fiduciary breach claim, Simmons is inapplicable.

duties.  See 29 U.S.C. § 1110.  Moreover, ERISA has no procedure for the review of fiduciary breach claims.  Accordingly, the district court's holding means that the plaintiffs can only file their fiduciary breach suit after exhausting a review process that does not exist in order to recover damages that the plan cannot pay.  This is precisely the type of "hollow act of utter futility" that this court described in Chailland.  Chailland, 45 F.3d at 950-51.  Because an exhaustion requirement of this sort is not required by statute or by case law, and because it would serve no purpose, I would find that the district court erred when it dismissed the plaintiffs' § 502(a)(2) claims for failure to exhaust administrative remedies.

**D. Conclusion**

I agree with the majority that the plaintiffs have failed to state a claim against Towers Perrin.  But I would hold that the plaintiffs have standing to pursue their fiduciary breach claims under § 502(a)(2) of ERISA.  I would also find that the district court erred by dismissing the plaintiffs' § 502(a)(2) claims for failure to exhaust administrative remedies.  Accordingly, I would reverse the judgment of the district court dismissing the plain-tiffs' § 502(a)(2) claims against the defendants other than Towers Perrin.