# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2014

Lyle W. Cayce
Clerk

No. 13-50344

ERIC TIBLIER, as Trustee of and on Behalf of the Dr. Eric Tiblier, P.A. Cash Balance Plan; SUSANNE TETZLAFF, as Trustee of and on Behalf of the Dr. Eric Tiblier, P.A. 401(K) Profit Sharing Plan,

> Plaintiffs – Appellants,

v.

PAUL DLABAL; CACH CAPITAL MANAGEMENT, L.L.C.,

> Defendants – Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before JONES, ELROD, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This case arises out of two investments made by the pension plans of a small cardiology practice in the bonds of an oil and gas company. After the oil and gas company stopped making interest payments on the bonds, Plaintiffs filed suit alleging violations of the Employee Retirement Income Security Act (ERISA). The district court granted summary judgment in favor of investment advisor Paul Dlabal. Plaintiffs appealed. We hold that Dlabal is not a fiduciary under ERISA, and accordingly AFFIRM.

1

No. 13-50344

I.

Eric Tiblier was a cardiologist with a practice in Austin, Texas. His wife, Susan Tetzlaff, managed the practice. In January 2008, Tiblier's practice began leasing space one day a week to his former colleague, Dlabal. In addition to practicing medicine, Dlabal was a licensed broker and registered investment advisor representative.[1] Dlabal's licenses did not allow him to individually serve as either a broker or an investment advisor; instead, he had to affiliate with a firm that served clients in those capacities. At the time of the dispute, Dlabal was affiliated with the now-defunct firm CACH Capital Management, LLC (CACH).

Tiblier and Tetzlaff engaged Dlabal and CACH as their investment advisors for both their personal investments, and for the pension plans established for Tiblier's practice. The practice's pension funds were invested through two vehicles: the Dr. Eric Tiblier, P.A. Cash Balance Plan, and the Dr. Eric Tiblier, P.A. 401(k) Profit Sharing Plan (collectively, Plans). Tiblier and Tetzlaff acted as the trustees for these respective Plans.[2] According to Plaintiffs, the Plans were intended to be conservative cash-balance plans, emphasizing stable long-term grown and avoiding risk. Although the Plans were set up in the name of Tiblier's practice and were open to any employee of his office who qualified as a participant, Tiblier and Tetzlaff made at least 95% of the contributions to the Plans.

---

[1] Dlabal obtained: (1) a Series 7 license allowing him to serve as a securities broker/dealer, but only through an affiliated broker/dealer firm; (2) a Series 66 license which allowed him to perform advisory work, but only through an affiliated investment advisor; and (3) a Group 1 Life license which allowed him to sell life insurance products.

[2] Tiblier and Tetzlaff brought this suit in their capacities as trustees of the Plans. We refer to them collectively in this capacity as "Plaintiffs."

No. 13-50344

In May 2008, Tiblier signed an Investment Management Agreement (Agreement) with CACH, in which CACH was designated as the "Advisor," and Dlabal was designated as the "Registered Representative." The Agreement granted the Advisor "limited discretionary authority" over Plaintiffs' investment. The Agreement did not reference the Registered Representative in the "Discretionary Authority" provision, but did disclose Dlabal's roles as broker, dealer, and seller of insurance products in the "Potential Conflict of Interest" section.

Dlabal and CACH subsequently proposed a number of investments to Plaintiffs. Plaintiffs rejected some of these proposals and accepted others. Many of Dlabal's proposed investments performed successfully. This dispute arises out of one that did not: based on Dlabal's recommendation Plaintiffs invested $100,000 of the Plans' funds in the corporate bonds of a company called Adageo Energy Partners, L.P. (Adageo).

Adageo was an oil and gas start-up company that intended to generate profits by purchasing under-utilized oil and gas investments and making them more productive. In order to help raise the $50 million that it needed to make these purchases, Adageo issued bonds that promised to pay 12% interest. Plaintiffs invested in these Adageo bonds in two $50,000 increments: one in July 2009, and the second in December 2009 (collectively, the Adageo Investment).

Under the Agreement, Dlabal was entitled to receive a 1.5% recurring annual fee from the Plans for the Adageo Investment. Dlabal choose instead to take a portion of the commission that Adageo paid to the third-party broker/dealer that Dlabal and CACH used to make this private placement investment. Dlabal's portion of that commission equated to roughly 2–2.5% of the Plans' investment, or about $2,500. This commission was expressly disclosed in the first line of each Non-Liquid Investment Risk & Disclosure

3

No. 13-50344

Form that Tiblier signed. Dlabal did not receive any other compensation in connection with the Adageo Investment.

In mid-2010, Adageo ceased making interest payments on the bonds, and non-party Wells Fargo, acting as trustee of the debentures, sought to liquidate Adageo in an action in Minnesota in state court.[3] Plaintiffs filed suit on January 24, 2012, in the United States District Court for the Western District of Texas, asserting that Dlabal and CACH: (1) violated § 10(b) of the Securities Act, and the attendant regulations under Rule 10-b(5); (2) breached their fiduciary duty under ERISA, including by transfer and self-dealing in violation of 29 U.S.C. § 1106(a)(l)(D) & (b); (3) breached their fiduciary duty by failing to comply with the terms of the investment plans, and by failing to provide Tiblier with necessary information; (4) were liable as co-fiduciaries for the other defendants' acts and omissions; and (5) violated the Investment Advisors Act, 15 U.S.C. § 80b-6(2). In essence, Plaintiffs alleged that the Adageo bonds were an unsuitable investment for the Plans' funds, and that Dlabal made multiple oral misrepresentations to Plaintiffs in violation of his fiduciary duties.

CACH was defunct by the time of the suit and did not answer the complaint. Dlabal moved for summary judgment on all claims. The district court granted summary judgment on all of Plaintiffs' non-ERISA claims because Plaintiffs "made no attempt to support" those claims in their response to the motion for summary judgment. As to the ERISA claims, the district court ruled that there was a disputed issue of material fact as to whether Dlabal was an ERISA fiduciary, but nonetheless granted summary judgment on these claims because Dlabal provided Plaintiffs with written disclosures revealing all but one of the risks that Plaintiffs claim they were unaware of.

---

[3] According to Plaintiffs, Wells Fargo has voluntarily dismissed the Minnesota suit and has yet to file suit in Texas seeking liquidation or bankruptcy.

No. 13-50344

Plaintiffs filed a motion to vacate/motion for new trial, which the district court denied. Plaintiffs then appealed, contesting only the district court's decision on its ERISA claims.

## II.

We now review Plaintiffs' ERISA claims, and conclude that summary judgment was appropriate. "A grant of summary judgment is reviewed *de novo*, applying the same standard on appeal that is applied by the district court." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 244 (5th Cir. 2006) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When ruling on a motion for summary judgment, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party, in this case, Plaintiffs. *Matsuchita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. "Where, as here, the movants for summary judgment advanced several independent arguments in district court in support of their motions for summary judgment, we will affirm if any of

5

No. 13-50344

those grounds support the district court's decision." *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1146 (5th Cir. 1993).[4]

### III.

The district court concluded that Dlabal had not violated ERISA because he provided Plaintiffs with written disclosures regarding the investment risks. Plaintiffs argue on appeal that Dlabal's disclosures were insufficient to overcome ERISA's strict fiduciary duties. We need not address this difficult question of first impression today because we conclude that Dlabal was not a fiduciary as defined by ERISA.

In order for Dlabal to be liable for his advice regarding the Adageo Investment, he must first be a fiduciary as defined by ERISA. Dlabal is only a fiduciary:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). It is not enough for Plaintiffs to show that Dlabal acted in a general fiduciary capacity. Rather, Plaintiffs must establish that Dlabal acted as a fiduciary with regard to the specific transaction about which they complain: the Adageo Investment. *See Milofsky v. Am. Airlines, Inc.*, 404

---

[4] Plaintiffs argue that Dlabal may not challenge the district court's determination that a fact issue remains as to whether Dlabal is a fiduciary because "those grounds [were] not [the] subject of the appeal." Plaintiffs are incorrect. Where—as here—we are reviewing a district court's grant of summary judgment, we are not limited only to those grounds relied upon by the court below. Nor are we limited to only the issues raised on appeal by Plaintiffs. Rather, we may affirm the district court's grant of summary judgment if any of the independent grounds offered by Dlabal below support the district court's decision. *See Chevron U.S.A., Inc.*, 987 F.2d at 1146.

F.3d 338, 341 (5th Cir. 2005). With regard to this transaction, Dlabal is not a fiduciary under any of the three subsections of the ERISA definition.

A.

Dlabal is not a fiduciary under § 1002(21)(A)(i) because he did not exercise discretionary authority or control over the Adageo Investment. To satisfy the "authority or control" requirement in § 1002(21)(A)(i), Plaintiffs must demonstrate that Dlabal caused the Plans' trustees to relinquish their independent discretion in investing the Plans' funds and to instead follow the course that he prescribed. *See Schloegel v. Boswell*, 994 F.2d 266, 272 (5th Cir. 1993). In *Schloegel*, we determined that the defendant did not have the degree of control necessary to satisfy § 1002(21)(A)(i) because: (1) the plan trustee, rather than the defendant, made the ultimate investment decision; (2) the trustee solicited third party advice, showing that his independent authority had not been usurped; and (3) not all of the people that the defendant tried to convince to invest were persuaded of his advice. *Id.*

Applying the same analysis to this case, Plaintiffs have not provided any evidence indicating that Dlabal had the "authority or control contemplated under subsection (i)." *Id.* Plaintiffs repeatedly acknowledged that they, rather than Dlabal, made the ultimate decision to buy Adageo bonds. Plaintiffs also admit that they made the decision based on the advice of both Dlabal and *another* adviser, Scott Curran. In addition, Plaintiffs rejected some of Dlabal's other investment proposals, demonstrating that he did not have control over their investments. As we said in *Schloegel*:

> Mere influence over the trustee's investment decisions . . . is not effective control over plan assets. . . . "[D]iscretionary authority" and "discretionary control" refer to actual decision-making power, not the influence a professional may have over the decisions made by the plan trustees[]."

7

*Id.* at 271–72 (internal quotation marks and citations omitted); *see also Wolin v. Smith Barney Inc.*, 83 F.3d 847, 849 (7th Cir. 1996), *abrogated on other grounds, Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ("An initial question was whether Mackevich was a fiduciary. Not everyone who provides investment advice to an ERISA plan is. A broker who merely touts stocks to the plan is not. . . . [ERISA] requires that the investment advisor, in order to be deemed a fiduciary, with all that that status implies, be rendering advice pursuant to an agreement, be paid for the advice, and have influence approaching control over the plan's investment decisions.").

As Dlabal correctly notes, whether Plaintiffs gave Dlabal discretionary authority or control over the Plans is irrelevant here because it is undisputed that Dlabal did not *exercise* that authority with respect to the only transaction at issue in this case. *See Zang v. Paychex*, 728 F. Supp. 2d 261, 272 (W.D.N.Y. 2010) ("[A] person is an [ERISA] fiduciary 'to the extent [that] he *exercises* any authority or control respecting management of disposition of its assets' . . . Notably then, the statute does not state that a person is a fiduciary if he *has* authority or control over plan assets, but only if, and to the extent, that he *exercises* such authority or control." (internal citations omitted)). Plaintiffs submitted Tiblier's declaration stating that "Dlabal had total control over these accounts, including the discretionary control to make trades as he saw fit, and he had control over the accounts held at Fidelity. I could not control or conduct trades on these accounts myself." This declaration, however, does not assert that Dlabal ever actually *exercised* the necessary control over the only transaction at issue here, the Adageo Investment. Indeed, Dlabal asserts that he never "made one trade in any Tiblier account ever," because his licenses did not allow him to take such actions. As a result, Plaintiffs' declaration does not raise a material issue of disputed fact regarding whether Dlabal had "authority or control" over the Adageo Investment. *See* 29 U.S.C. § 1002(21)(A)(i).

No. 13-50344

Nor does the Agreement demonstrate that Dlabal exercised authority or control over the Adageo Investment.  The district court focused on the "Discretionary Authority" provision of the Agreement, and concluded that this provision created a fact issue as to whether Dlabal had the authority and control necessary to be a fiduciary under § 1002(21)(A)(i).  We disagree with the district court's reading, which conflicts with the plain language of the Agreement.  The Discretionary Authority provision states: "The Client hereby grants Advisor limited discretionary authority over his/her investments for the purposes of making buys, sells, and exchanges in the Client's designated accounts."  The Agreement only provides the "Advisor" with control over the Plans' investments, and the Agreement defines CACH, rather than Dlabal, as the "Advisor."  The Agreement instead designates Dlabal as the "Investment Advisor Representative" or "Representative."  The Agreement does not mention the Representative—Dlabal—in the Discretionary Authority provision.  In contrast, the Representative is specifically referenced in the "Potential Conflict of Interest" provision of the Agreement.  As a result, the Agreement does not provide Dlabal with discretionary authority over the Plans.  Nor does it demonstrate that he exercised such control.  *See Zang*, 728 F. Supp. 2d at 272.  Plaintiffs have therefore failed to show that a disputed issue of material fact remains regarding whether Dlabal satisfies the definition of a fiduciary under § 1002(21)(A)(i).

B.

Dlabal is not a fiduciary under § 1002(21)(A)(ii) because he did not receive a fee from the Plans in connection with the Adageo Investment.  The only compensation that Dlabal received came instead from a third party.  Under our binding precedent in *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United*

9

No. 13-50344

*States*, this third party commission is not a fee under § 1002(21)(A)(ii).   841 F.2d 658 (5th Cir. 1988).

In *Equitable Life*, the defendant was hired by a company called Equitable to solicit applications for life and health insurance policies and annuity contracts on a salary plus commission basis. *Id.* at 660.   The defendant later became the administrator of the plaintiff's benefits program while continuing to work for Equitable.   Equitable and the defendant advised the plaintiff that it could reduce its costs by adopting a self-insured health benefits program, which later turned out to cost the plaintiff much more. *Id.* at 660–61.   We held the defendant was not a fiduciary under § 1002(21)(A)(ii) with respect to that particular piece of "unsound" investment advice because "[t]here is no evidence that [the defendant] was paid a fee by the [plaintiff] for giving this investment advice.   His commissions on this business came from Equitable." *Id.* at 664. Likewise, Dlabal's commission for the Adageo Investment came from a third party, rather than the Plans or Plaintiffs and is not a fee under § 1002(21)(A)(ii).   Plaintiffs have not offered evidence of any other fees or compensation that the Plans paid to Dlabal for his advice regarding the Adageo Investment.[5]   They have therefore failed to prove that he is a fiduciary under § 1002(21)(A)(ii) of ERISA.

## C.

Plaintiffs concede that § 1002(21)(A)(iii) does not apply.   It is undisputed that Dlabal played no part in the administration of the Plans, which was

---

[5] At oral argument, Plaintiffs also asserted that Dlabal received a general fee for investment advice, and thus received compensation under § 1002(21)(A)(ii).   This is insufficient under our precedent.   Instead, Plaintiffs must establish that Dlabal acted as a fiduciary with regard to the *specific transaction* about which they complain. *See Milofsky*, 404 F.3d at 341.

10

administered at all relevant times by an independent third-party administrator.[6]  Dlabal therefore does not qualify as a fiduciary under any of the three subsections of the ERISA definition.  Because the summary judgment evidence demonstrates that Dlabal is not an ERISA fiduciary with regard to the Adageo Investment, we AFFIRM the district court.

---

[6] This case is thus distinguishable from the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996), where "Varity was both an employer and the benefit plan's administrator" and the Supreme Court was left to parse whether Varity was speaking as an employer or as the plan's administrator when it made the statements at issue in that case. *Id.* at 505.  Here, it is uncontested that a third party was the plan administrator.